(No. 41222.—

BRENNAN CATTLE COMPANY, Appellee, *vs.* THEODORE A.
JONES, Director of Revenue, Appellant.

*Opinion filed November 22, 1968.*

WILLIAM G. CLARK, Attorney General, of Springfield, (JOHN J. O'TOOLE and ROBERT F. NIX, Assistant Attorneys General, of counsel,) for appellant.

EDWARD M. GERRITY, of Sycamore, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

In this administrative review action the circuit court of DeKalb County reduced a final assessment of use tax and penalties made by the Department of Revenue against the plaintiff, Brennan Cattle Company. The revenue is involved, and the Department has appealed directly to this court.

The plaintiff is engaged in the business of buying and selling cattle. It buys cattle on the ranges in the western and southern United States, ships them to its yards in Illinois, and then resells them to local farmers and feeders who eventually sell to meat packers. The cattle are held for resale in the plaintiff's yards for lengths of time varying from a few hours to up to six months. Whenever necessary, cattle being held for resale are fed and watered, are given treatments to prevent or correct the sicknesses that often follow when cattle are subjected to stress, and are sprayed to control external parasites.

In order to effect these treatments plaintiff purchases vitamins, medicines and sprays and through its agents injects or orally administers the vitamins and medicines into and applies the sprays upon the cattle. In addition, as a service to customers, the plaintiff contracts with local veterinarians to vaccinate cattle and then resells these vaccinations to the customer as a separate item of his purchase.

The issue in this case involves the liability of the plaintiff for an assessment of use tax and penalties totalling $866.42 which was imposed on plaintiff's purchase of vita-

mins, medicines, vaccinations and sprays. (The Department's final order of assessment was for $1,139.62; however, the circuit court held and the taxpayer has conceded that use tax and penalties of $273.20 were due on the plaintiff's out-of-state purchases of airplane parts and other items not relevant to this appeal.) It is the contention of the plaintiff, which the trial court sustained, that the vitamins, medicines and sprays are incorporated into the cattle which are resold and therefore are not taxable. The Department urges that these products fall within a Department rule which specifically states they do not become ingredients or constituents of the final product sold at retail.

The Use Tax Act provides that "A tax is imposed upon the privilege of using in the State tangible personal property purchased at retail * * * from a retailer." (Ill. Rev. Stat. 1963 and 1965, chap. 120, par. 439.3.) "Use" is basically defined as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, * * *". The statute excludes from that basic definition "the physical incorporation of tangible personal property, as an ingredient or constituent, into other tangible personal property (a) which is sold in the regular course of business * * *." (Ill. Rev. Stats. 1963 and 1965, chap. 120, par. 439.2.) The problem in this case is the interpretation of this exclusion which was designed to avoid double taxation.

We have not been cited to nor have we been able to locate any cases exactly in point; however, the situation here is similar to that in *Granite City Steel Co.* v. *Department of Revenue,* 30 Ill.2d 552, where we dealt with this exclusion. There the question was the taxability of out-of-state purchases of coke which was used in the plaintiff's process of manufacturing pig iron. The coke was mixed with limestone and iron ore and the mixture was heated in blast furnaces. The coke performed two functions: first, it was burned to produce heat to melt the iron and second,

in the process of burning some of the carbon from the coke was infused into the iron. We held that so much of the coke as was utilized to supply heat for the production of pig iron, and did not become an ingredient of the finished pig iron, was "used" within the meaning of the Use Tax Act. In *Granite City,* the test for determining the extent to which the coke became an ingredient of the pig iron was the percentage of coke which was sold as carbon in the finished pig iron. Such a determination is in keeping with the purposes of the exclusion to prevent double taxation contained in section 2 of the Use Tax Act. Ill. Rev. Stats. 1963 and 1965, chap. 120, par. 439.2.

The Department of Revenue, recognizing the purpose for the exclusion, has interpreted this exclusion in a number of Department rules which are relevant to the items in question here. Certain materials, when consumed by livestock, become constituents of the animal and thus are part of the animal when resold. When feeder animals are eventually sold to a packer he converts them to meat ultimately sold to consumers at which time the meat is subject to the Illinois retailers' occupation tax. The Department has given these materials the broad label of "feed", and in Rule 32(3) states that, when these materials are sold for consumption by animals being fed for market, the sale is not taxable. "Persons selling feeds to purchasers for feeding livestock or poultry for marketing, or for producing dairy products or eggs for marketing, are not making sales for use or consumption. Such sales of feeds are deemed to be sales, for purposes of resale of the property which, 'as an ingredient or constituent goes into and forms a part of tangible personal property subsequently the subject of a "sale at retail"'." (Department of Revenue, Illinois Retailers' Occupation Tax Rules, Rule 32(3).) The Department has defined "feed" by listing certain materials which are included within that category and by listing other materials which are not included. "The term 'feed' includes

salt, grains, tankage, oyster shells, mineral supplements, limestone and other generally recognized animal feeds. The term 'feed' does not include stock tonics, poultry remedies, other medicinal preparations and conditioners, water purifying products, stock sprays, disinfectants and the like." (Department of Revenue, Illinois Retailers' Occupation Tax Rules, Rule 32(1).) The sale of items listed in the nonfeed category is made taxable in Rule 13(1). "Persons who (apart from engaging in a service occupation) engage in selling stock tonics and sprays, serums, vaccines and other medicinal preparations, insecticides, weed killers and the like to purchasers for use or consumption incur retailers' occupation tax liability when making such sales. These items are not considered to be resold by the purchasers because of the fact that the purchasers use such items in connection with the raising of animals or crops for sale." Department of Revenue, Illinois Retailers' Occupation Tax Rules, Rule 13(1).

The Department's interpretation of the exclusion as expressed in the distinctions drawn in Rule 32(1) appears to be correct as applied to the medicines and sprays. Even though medicines are orally administered or injected into the bodies of the cattle, the statute requires more than the mere incorporation. The statute speaks of the "physical incorporation * * * as an ingredient or constituent" into other property which is resold. We have construed this as requiring a retention of the item in question within the property being resold. (See *Granite City Steel Co. v. Department of Revenue*, 30 Ill.2d 552, 560.) In *Granite City* we applied the exclusion only so far as the item was retained or became an ingredient of the resold product. The proportion of the item retained must be significant as there is a *de minimis* rule in this area. *Smith Oil & Refining Co. v. Department of Finance*, 371 Ill. 405.

There is no evidence in the record that medicine or

sprays when used on cattle leave a residue that would make a measurable difference in the weight of the cattle when ultimately converted into meat, and sold subject to retailers occupation tax. These items are products used to care for cattle and are not ingredients or constituents of the resold cattle within that exclusion under section 2 of the Use Tax Act.

The Department has also assessed use tax on plaintiff's purchase of vitamins. This may have been incorrect. Vitamins are commonly regarded as nutrients which, even though necessarily in rather small quantities, are considered essential to the life processes. We therefore remand to the Department that portion of the assessment which is based upon plaintiff's purchase of vitamins for a hearing on the issue of the retention of vitamins in the cattle at the time of resale. If vitamins are in fact retained, as we suspect, the Department should correct its construction and possibly its drafting of Rule 32(1) so as to place vitamins within the "feed" or nontaxable category. The Department's rules cannot impose the tax upon items not intended by the statute (see *Ex-Cello-O-Corp.* v. *McKibbin,* 383 Ill. 316, 320), and distinctions made by the Department not supported by the statute cannot be sustained. *Material Service Corp.* v. *McKibbin,* 380 Ill. 226, 240.

The Department's field audit contains some entries for vaccinations administered by local veterinarians and paid for by the plaintiff. (*E.g.,* the bill from Schelkopf Veterinary Clinic for $339.68, paid April 2, 1965, itemized in Taxpayer's Exhibit 21.) The evidence in the record is clear that the veterinarians' receipts for these vaccinations were for the rendition of professional service and the sale of vaccines incident to that service. Veterinarians engaged in such service are not required to remit retailers' occupation tax on the receipts from the service or the property sold (Department of Revenue, Illinois Retailers' Occupation

Tax Rules, Rule 44(2)); therefore plaintiff, as the purchaser, would not be liable for the use tax. Ill. Rev. Stats. 1963 and 1965, chap. 120, par. 439.3.

Plaintiff next contends that Rule 13(1) applies only to cattle raisers and not to it as a cattle dealer because of the language in the last sentence of that paragraph, "in connection with the raising of animals  *  *  *." Plaintiff would have us read Rule 13 so as to impose the use tax on the purchase of medicines and sprays which the rancher used on the cattle before they were sold to plaintiff, and which the feeder used on the cattle after they were purchased from the plaintiff; yet, the use of the same medicines and sprays by the plaintiff would not be taxable because they were used on the cattle during the brief period the cattle are owned by neither the rancher nor the farmer-feeder. We hold that the intent of the statutes requires a much broader construction and a less ridiculous result. The term "raising" as used in Rule 13(1) covers the broad spectrum of caring for and tending animals so as to place the plaintiff's activities clearly within the rule.

Proper disposition of this case requires a reversal of the circuit court's judgment and remand of the cause to the Department of Revenue. The Department should retain in its audit the purchase of medicines, sprays and the items not controverted here, eliminating therefrom the cost of the vaccinations, as the use tax cannot be assessed on them. A hearing should be conducted on the issue of the retention of vitamins within the cattle, appropriate findings of fact made and such decision reached as the evidence requires. *Columbia Quarry Co.* v. *Department of Revenue,* 34 Ill.2d 46.

*Reversed and remanded, with directions.*