(No. 58148.—

MOODY'S INVESTORS SERVICE, INC., Appellee, v.
THE DEPARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed March 23, 1984.*

Neil F. Hartigan, Attorney General, of Springfield (Georgene M. Wilson, Assistant Attorney General, of Chicago, of counsel), for appellants.

Richard C. Godfrey, James R. Browne, and Jonathan B. Newcomb, of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Moody's Investors Service, filed suit in the circuit court of Sangamon County in March of 1980 to obtain administrative review of the Department of Revenue's tax assessment for the period from July 1970, through March 1974. The Department of Revenue claims that Moody's financial publications were subject to taxation pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*) and the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.1). Moody's obtained a voluntary dismissal under the provisions of section 52 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 52), which is now section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—1009(a)), and refiled its complaint within one year of the voluntary dismissal. On February 24, 1982, the circuit court held that Moody's was not subject to the tax assessment, and the Department appealed. The appellate court affirmed the judgment of the circuit court (112 Ill. App. 3d 1024), and we granted defendant's petition for leave to appeal (87 Ill. 2d R. 315(a)).

Three issues are presented for review: (1) Did the plaintiff's voluntary dismissal and subsequent refiling deprive the circuit court of jurisdiction? (2) Did the plaintiff's failure to post a bond in the first action preclude a successful second action? (3) Are the plaintiff's publications eligible for an exemption pursuant to the Retailers'

Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*)?

Resolution of this appeal involves analysis of the procedural history that begins with the enactment of the taxation statute under scrutiny. In Illinois, transactions involving tangible personal property are subject to State taxation, with certain exceptions, including the following:

> "The purchase, employment and transfer of such tangible personal property as newsprint and ink for the primary purpose of conveying news (with or without other information) is not a purchase, use or sale of tangible personal property." Ill. Rev. Stat. 1979, ch. 120, par. 440.

This exception is grounded in the public policy behind dissemination of information and an informed citizenry, and makes it possible for an individual to purchase a newspaper, magazine or trade journal without paying the sales tax applicable to other consumer transactions. (See *Chicago Tribune Co. v. Johnson* (1983), 119 Ill. App. 3d 270.) The crucial question in this appeal involves the characterization of Moody's publications. Moody's maintains that its publications should be exempt from taxation, while the Department maintains that the disputed publications do not qualify for the newsprint exemption. Moody's sells eight publications by subscription to residents of Illinois:

1. *News Reports* are issued twice a week and contain detailed descriptions of financial markets and investments. These reports are generally combined into manuals on an annual basis.

2. *Bond Surveys* are published weekly and describe the relative investment strengths of bond offerings.

3. *Stock Surveys* are published weekly and contain detailed information about the stock market and economic factors affecting stock trading.

4. *Handbooks of Common Stocks* are issued quarterly. Each issue supersedes the previous one, and provides background information on the performance of over 2,500

stocks.

5. *Dividend Records* are issued twice a week and describe the dividend performance of approximately 6,000 companies.

6. The *Bond Record* is issued each month and provides data on the performance of over 19,000 bonds.

7. *Municipal Credit Reports* are issued irregularly but are carefully followed in the financial community. A change in a municipal bond rating often produces headlines in the commercial press and a flurry of political activity.

8. *Commercial Paper Reports* are also published irregularly and contain evaluations of other forms of commercial paper.

The Illinois State Department of Revenue conducts periodic audits to determine if retailers have remitted the correct amount of tax revenue to the State. The Department issues a "Notice of Tax Liability," and retailers have the opportunity to contest this assessment by requesting a formal review before a hearing board of the Department of Revenue. The legislature has provided what appears to be a complicated scheme of administrative review. Since this procedure has not been contested in the case at bar, discussion of all of the elements of the administrative review would be superfluous.

On June 26, 1974, the Department's audit of Moody's sales during the period from July 1970 to March 1974 disclosed a tax liability of $36,192.72, plus $7,238.54 in penalties and $9,048.27 in interest, for a total of $52,479.53. Moody's submitted a formal, written protest to this assessment on July 15, 1974. The protest was made in the form of a letter by William A. Deisler, assistant corporate tax manager of Moody's. The protest claimed that the publications were not taxable under the "newsprint exemption" (Ill. Rev. Stat. 1979, ch. 120, par. 440). The hearing board denied the protest. Moody's requested a rehearing and made a "good faith" deposit of $14,200. Moody's pursued

a protracted course of rehearings until a final assessment was issued on February 11, 1980. The total, adjusted liability was fixed at $72,700.20. This amount corrected a computational error in the original assessment, included additional interest, and an additional penalty. On July 1, 1979, Moody's made an additional payment of $28,225.00.

Moody's filed a complaint for administrative review in the circuit court of Sangamon County in March of 1980, but voluntarily dismissed this action on July 31, 1980. (See Ill. Rev. Stat. 1979, ch. 110, par. 52 (the voluntary dismissal provision).) This complaint was filed within 35 days from the date that a copy of the board's decision was served upon Moody's as required by the statute. (Ill. Rev. Stat. 1979, ch. 110, par. 267.) Moody's refiled its complaint on May 15, 1981, under the provisions of section 24 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 24a). Moody's complied with the statutory requirements by posting a bond within 20 days of May 15, 1981, the date it refiled the complaint. The bond provision of the Retailers' Occupation Tax Act states:

> "Any suit under the 'Administrative Review Act' to review a final assessment or revised final assessment issued by the Department under this Act shall be dismissed on motion of the Department or by the court on its own motion, unless the person filing such suit files, with the court, within 20 days after the filing of the complaint and the issuance of the summons in the suit, a bond with good and sufficient surety or sureties residing in this State or licensed to do business in this State or unless the court, in lieu of said bond, shall enter an order imposing a lien upon the plaintiff's property as hereinafter provided." Ill. Rev. Stat. 1979, ch. 120, par. 451.

In summary of these procedural events, Moody's failed to file a bond in the first lawsuit filed in March of 1980. However, the second lawsuit was timely filed on May 15, 1981, and the provisions of section 12 (the bond requirement) were complied with. On June 17, 1981, the Depart-

ment moved to dismiss Moody's complaint on the grounds that it was not filed within 35 days of the final assessment on February 11, 1980 (Ill. Rev. Stat. 1979, ch., 110, par. 267 (35-day provision)). The trial court denied the Department's motion and entered judgment for Moody's on February 24, 1982. The appellate court affirmed this judgment on February 17, 1983 (112 Ill. App. 3d 1024), holding that Moody's publications were eligible for the newsprint exemption, and exempt from State taxation.

We turn now to the first issue raised on appeal: Did Moody's voluntary dismissal and subsequent refiling deprive the circuit court of jurisdiction? We begin by noting that resolution of this issue turns on the construction of two distinct statutory provisions: section 52 of the Civil Practice Act on voluntary dismissal (Ill. Rev. Stat. 1979, ch. 110, par. 52) and section 24 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 24a). Section 52 of the Civil Practice Act allows a plaintiff to dismiss an action at any time before trial or a hearing begins. This is an absolute right, and is not tempered by any discretionary language in the statute:

"Sec. 52. Voluntary dismissal.

(a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or his attorney, and upon payment of costs, dismiss his action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter he may dismiss, only on terms fixed by the court (a) upon filing a stipulation to that effect signed by the defendant, or (b) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof. After a counterclaim has been pleaded by a defendant no dismissal may be had as to him except by his consent." Ill. Rev. Stat. 1979, ch. 110, par. 52.

We next consider the precise language of section 24 of the Limitations Act:

"In the actions specified in this Act or any other act

or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict for the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution *** the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater ***." (Ill. Rev. Stat. 1979, ch. 83, par. 24a.)

The Department of Revenue contests the applicability of section 24 of the Limitations Act on the grounds that it abrogates the voluntary-dismissal provisions of section 52 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 52). We do not agree with this assessment. A refiling within one year of a voluntary dismissal does not deprive the circuit court of jurisdiction. (*Conner v. Copley Press* (1984), 99 Ill. 2d 382; see also *Franzese v. Trinko* (1977), 66 Ill. 2d 136.) The cases cited by the Department of Revenue do not support the opposite conclusion. In *People ex rel. Myers v. Pennsylvania R.R. Co.* (1960), 19 Ill. 2d 122, this court ruled that a taxation limit for school districts was not repealed by a subsequent amendment to the taxation statute. *Myers* stands for the proposition that there is a presumption that the State amends a statute with knowledge of other existing statutes. *Myers* does not establish that section 52 of the Civil Practice Act supersedes section 24 of the Limitations Act. We construe the two statutes as being in harmony with one another, and conclude that Moody's voluntary dismissal and subsequent refiling did not deprive the circuit court of jurisdiction.

The Department filed a motion to dismiss, but Moody's filed a motion for a voluntary dismissal before the motion to dismiss was argued. The Department's contention that the filing of a motion to dismiss constitutes a hearing is without merit. (See *LaBarge, Inc. v. Corn Belt Bank* (1981), 101 Ill. App. 3d 741.) The Department misconstrues

Illinois case law to support this assertion. In *City of Palos Heights v. Village of Worth* (1975), 29 Ill. App. 3d 746, the court affirmed the plaintiff's voluntary dismissal after the defendant had filed a motion to dismiss. The court in *City of Palos Heights* modified the draft order that was the product of the voluntary dismissal (29 Ill. App. 3d 746, 748-49), but did not disturb the basic principle that a plaintiff can voluntarily dismiss an action before trial and refile within the statutory time limit.

We turn now to the second jurisdictional issue: Did Moody's failure to post a bond in the first action preclude a successful second action? In the first action, Moody's neglected to post a bond pursuant to section 12 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 451). Both sides provide different explanations for this apparent procedural defect. The Department of Revenue claims that Moody's realized its mistake and voluntarily dismissed the complaint to prevent a favorable verdict for the Department. Moody's argues that it was confused by a 1980 amendment to the statute (Ill. Rev. Stat. 1981, ch. 127, par. 39b20), and needed time to study the proper remedy. Our analysis of this issue is controlled by the ruling in *Glasco Electric Co. v. Department of Revenue* (1981), 86 Ill. 2d 346. In *Glasco,* we held that the filing of an appeal bond within 20 days of a complaint for review of State tax assessments was mandatory, but not jurisdictional. This court noted:

> "Thus, there can be no question that, prior to the expiration of the 20-day period following the filing of the complaint, the circuit court had jurisdiction. The question that arises is whether the court was divested of jurisdiction when the plaintiff's bond was not filed within 20 days. In construing a statute it is of course fundamental that we seek to ascertain the legislature's intention. *** This construction is required to protect the Department's interest against a taxpayer's dissipating or otherwise disposing of assets while the review before the circuit court

is pending. This, we judge, was certainly the legislature's intent. We do not, however, deem that it was the legislative design to make the bond-filing provision of section 12 jurisdictional. This conclusion is consistent with those rules of statutory construction under which courts liberally construe a right to appeal so as to permit a case to be considered on its merits." 86 Ill. 2d 346, 351-52.

We conclude that, under *Glasco,* Moody's failure to post a bond in the first action was a procedural, nonjurisdictional defect that did not survive to taint the second action. We agree with the appellate court's assessment of this issue:

"We know of no authority which holds that a procedural defect survives a voluntary dismissal. Section 24 of the Limitations Act refers to a 'new' action commenced within one year; if an action be new, it can scarcely be said to carry with it any of the shortcomings of its predecessors. The clear implication of the statutory wording is that the parties start afresh." 112 Ill. App. 3d 1024, 1030.

The Department contends that the appellate court's ruling constitutes a judicial repeal of the bond requirement, violating the separation of powers doctrine. This argument is without merit. The appellate court's ruling does not disturb the bond requirement in an appeal for administrative review of taxes, but merely allows a plaintiff his or her day in court if a technical defect in an earlier action is not repeated in a timely second action. Illinois courts have consistently given the bond requirement a liberal interpretation (*Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1977), 52 Ill. App. 3d 90; *Avondale Liquor Store, Inc. v. Department of Revenue* (1983), 116 Ill. App. 3d 804), and we see no reason to abandon this interpretation. See *Tick Brothers, Inc. v. Department of Revenue* (1983), 118 Ill. App. 3d 729.

Finally, we reach the third issue: Are Moody's publications eligible for the newsprint exemption from the State tax? A careful review of the facts in this case mandates an

affirmative answer. In *Time, Inc. v. Hulman* (1964), 31 Ill. 2d 344, this court held that publishers of news were exempt from the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1963, ch. 120, par. 440 *et seq.*). Even a cursory review of Moody's publications warrants the conclusion that the publications contain news. The Department maintains that crossword puzzle magazines are newsworthy and Moody's financial publications are not. The Department is also unable to explain why Moody's announcement that a city's bond rating has dropped is not news, yet becomes news when published the next day by *The Wall Street Journal*. We also note that all of Moody's publications qualify for second-class postage in the United States Postal System, a category reserved for news magazines and similar publications. We therefore conclude that the Hearing Board's finding was against the manifest weight of the evidence, and that the circuit court correctly reversed the Hearing Board's findings. In light of our holding, we need not consider the appellee's alternative arguments concerning the United States Constitution and *res judicata*. We affirm the judgments of the circuit court and the appellate court.

*Judgments affirmed.*