(Nos. 84435, 84451 cons.—

SUSAN McLEAN, Adm'r of the Estate of Leonard C. Pace, Appellee and Cross-Appellant, v. THE DEPARTMENT OF REVENUE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee.

*Opinion filed October 22, 1998.—Modified on denial of rehearing December 29, 1998.*

HEIPLE, J., dissenting.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Erik G. Light and John P. Schmidt, Assistant Attorneys General, of Chicago, of counsel), for appellant and cross-appellee.

Tad Armstrong, of Edwardsville, for appellee and cross-appellant.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

The Department of Revenue of the State of Illinois (Department) directly appeals, pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)), from a final judgment order of the circuit court of Madison County, which set aside in part and confirmed in part a final administrative decision of the Department. In its final decision, the Department found that Leonard C. Pace (plaintiff)[1], d/b/a 270 Auction Barn, was liable for $110,110.92 in taxes, penalties, and interest pursuant to the Retailers' Occupation Tax Act (Act) (35 ILCS 120/1 *et seq.* (West 1996)) for the tax years 1990 through 1992. Upon administrative review, the circuit court confirmed the Department's assessment only to the extent of $11,111 in taxes under the Act and set aside the Department's assessment in all other respects. The circuit court

---

[1] This court has ordered that Susan McLean, the administrator of the estate of Leonard C. Pace, be substituted for the taxpayer as appellee in this appeal.

also struck down as unconstitutional three statutory provisions and invalidated one administrative regulation pertaining to the Act.

The Department now appeals to this court. The appeal lies directly to this court. We affirm in part and reverse in part and remand with directions.

## BACKGROUND

Plaintiff operated an auction business engaged in the sale of household goods on consignment and personal property obtained primarily from estates, storage lockers, and buildings. In 1993, the Department performed a tax audit of plaintiff's business for the period beginning January 1, 1990, and ending December 31, 1992. The Department's auditor subsequently prepared a "corrected return" assessing plaintiff's tax liability at approximately $65,000 in unpaid tax. The auditor also assessed a 30% penalty equaling approximately $19,500 for plaintiff's failure to file a return. Following the Department's issuance of its notice of tax liability to plaintiff, both parties stipulated that the correct amount of unpaid taxes, if any, was $56,424. This amount was based upon $20,000 in unpaid tax due to the sale of goods that plaintiff had owned and $36,424 in unpaid tax due to the sale of goods on consignment. Based on that stipulated total, the Department calculated a 30% "failure to file" penalty in the amount of $16,927 in addition to $36,759.92 in interest as of April 15, 1997.

Plaintiff subsequently filed a protest for an administrative hearing in order to contest the Department's assessment. In September 1996, an administrative hearing was held, at which the following evidence was adduced. The Department introduced its certified corrected return resulting from the audit of plaintiff's business and stipulated once again that its assessment was based on a total of $56,424 in unpaid taxes. Plaintiff testified at the hearing that he was unable to produce his business' books

and records for the audit period due to their destruction caused by the Metro East floods of 1993. Nevertheless, plaintiff acknowledged that he did not file tax returns during the tax years in dispute. Plaintiff also testified that, despite the loss of his sales documentation, he knew the identities of all the consignors with whom he had dealt. He also stated that, although he did not announce to prospective bidders the names and addresses of his consignors, he did announce that such information was available to bidders at his front desk.

The administrative law judge's findings of fact included the conclusion that plaintiff hired independent contractors to act as auctioneers on plaintiff's behalf. Additionally, neither plaintiff nor his auctioneers orally announced to prospective purchasers the identities or addresses of the owners of the merchandise sold during the tax years in question. Likewise, plaintiff failed to post any lists or distribute hand bills with the names and addresses of consignors of the property to be sold at auction. The administrative law judge also found that, in determining his tax liability during the relevant tax years, plaintiff relied upon two of the Department's official, explanatory publications—namely a departmental release dated May 1, 1990, and "Informational Bulletin FY 91-49" dated April 1, 1991.

Based on the foregoing, the administrative law judge rendered a recommendation for disposition in March 1997, upholding the Department's stipulated assessment of tax, penalties, and interest totalling $110,110.92. The Department adopted this administrative recommendation and issued a final assessment against plaintiff on April 15, 1997.

Thereafter, plaintiff filed a complaint for administrative review as well as a complaint for declaratory judgment in the circuit court. Count I of plaintiff's second-amended complaint sought a declaration that the "bond

or lien" and "payment for record" requirements of section 12 of the Act (35 ILCS 120/12 (West 1996)) violate the Illinois and United States Constitutions (Ill. Const. 1970, art. I, §§ 2, 12; U.S. Const., amend. XIV, § 1) and the Taxpayers' Bill of Rights Act (20 ILCS 2520/1 *et seq.* (West 1996)). In count II, plaintiff sought reversal of the Department's final decision in administrative review, alleging that: the Department's determination was predicated upon an incorrect interpretation of section 130.1915 of the Revenue Regulations (86 Ill. Adm. Code § 130.1915 (1996)); the Department exceeded the scope of its authority in promulgating section 130.1915; section 130.1915 violates numerous provisions of the state and federal constitutions; and all tax imposed under section 2 of the Act (35 ILCS 120/2 (West 1996)) is unconstitutional.

In order to effectuate his appeal, plaintiff applied for a surety bond. Due to insufficient net worth, however, plaintiff was denied the surety bond. Immediately thereafter, plaintiff requested that the circuit court impose a lien upon his property, which the circuit court granted in the full amount of the Department's final assessment. On October 15, 1997, the circuit court entered a final judgment order explaining the reasoning behind its rulings.

The circuit court ruled that, while its granting of a lien in lieu of a bond rendered moot plaintiff's argument concerning the constitutionality of that provision, the court would nevertheless consider the allegations in plaintiff's complaint by invoking the "public interest" exception to the mootness doctrine. The circuit court concluded that the "bond or lien" requirement is unconstitutional insofar as it denies taxpayers of limited wealth: (1) "justice by law, freely [and] completely" and "a certain remedy in the laws for all injuries and wrongs" to taxpayers' property, in contravention of article I, section 12, of the Illinois Constitution (Ill. Const. 1970, art.

I, § 12); due process and equal protection of the laws in contravention of article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) and the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV, § 1); and adequate procedural protection ensured by the Taxpayers' Bill of Rights Act (20 ILCS 2520/2 (West 1996)). Similarly, the circuit court addressed the admittedly moot issue of the constitutionality of the "payment for record" provision of the Act (35 ILCS 120/12 (West 1996)) and ruled that it violated the same constitutional and Bill of Rights provisions as the "bond or lien" requirement.

With respect to plaintiff's dispute over the Department's final tax determination, the circuit court ruled that the Department erroneously applied its own regulation (86 Ill. Adm. Code § 130.1915 (1996)) in assessing taxes for the sale of goods on consignment under the Act. In brief, the court ruled that the Department should not have assessed a tax on plaintiff's sale of consignment goods under section 130.1915 of the revenue regulations, since plaintiff was aware of all of his principals in those transactions. The circuit court, therefore, reversed the Department's entire assessment of taxes, penalties, and interest on plaintiff's consignment sales during the audit period. Additionally, the court ruled that the Department exceeded its authority in creating section 130.1915, because it impermissibly alters and extends the substantive provisions of the Act and violates the Act's mandate requiring "reasonable rules and regulations" (35 ILCS 120/12 (West 1996)). The circuit court, however, declined to rule the taxing provision of the Act (35 ILCS 120/2 (West 1996)) unconstitutional.

Next, the circuit court determined that certain of the Department's informational publications provided false advice to taxpayers with respect to the taxation of consignment sales. Consequently, the court ruled that

plaintiff's reliance upon such publications justified the court's abatement of all taxes imposed on plaintiff's sale of consignment goods. As for the Department's imposition of taxes upon the sale of goods owned by plaintiff, the circuit court abated all but $11,111 of the $20,000 assessed upon such sales, on the grounds that plaintiff had reasonably relied upon the Department's erroneous informational release for 16 of the 36 months for which plaintiff was audited. The court's upholding of $11,111 in taxes was based upon its determination that, for the remaining 20 months of the audit period, the Department's "Informational Bulletin FY 91-49," dated April 1, 1991, corrected any misleading information published in the Department's May 1, 1990, release.

In addition, the circuit court abated all penalties and interest assessed against plaintiff, including penalties and interest associated with the tax of $11,111 confirmed by the court. Finally, the court awarded plaintiff $70,491 in attorney fees and costs pursuant to section 10—55 of the Illinois Administrative Procedure Act (5 ILCS 100/10—55 (West 1996)), for securing the invalidation of an administrative regulation, and pursuant to the Taxpayers' Bill of Rights Act (20 ILCS 2520/7 (West 1996)), for the Department's imposition of a tax assessment without reasonable cause.

## ANALYSIS

Prior to adjudicating these consolidated appeals, we must dispose of the Department's motion to remand taken with this case. Relying on our decision in *Trent v. Winningham*, 172 Ill. 2d 420 (1996), the Department argues that remand is necessary due to the circuit court's unnecessary rulings as to the constitutionality of various statutory provisions. We disagree. Our decision in *Trent* hinged upon the fact that the circuit court in that case based its judgment on three alternative grounds: one being that the applicable statute at issue was unconstitu-

tional; and the other grounds being determined through the application of the relevant provisions of the same statute. Since the circuit court's constitutional ground for denying relief to the plaintiff was unnecessary for the resolution of the relevant issue, in light of the two alternative reasons presented, this court determined that that ground could not properly serve as a basis for direct supreme court review under Supreme Court Rule 302(a). *Trent*, 172 Ill. 2d at 426.

This case is distinguishable from *Trent*. In the instant case, the circuit court's judgment rendering certain statutory provisions unconstitutional did not serve as additional grounds for granting or denying relief. Indeed, the issues concerning the constitutionality of certain statutory provisions existed independently of those issues relating to the merits of plaintiff's arguments on administrative review. In other words, the resolution of the constitutional issues in this case have no bearing upon the outcome of plaintiff's challenge of the Department's tax assessment. Therefore, in our view, the context in which the circuit court rendered the instant statutory provisions unconstitutional satisfies the jurisdictional requirements of Supreme Court Rule 302(a) and does not erode the "scheme of appellate and supreme court review" which this court cautioned against in *Trent*, 172 Ill. 2d at 426.

Additionally, we note the Department's argument that *Trent* should nevertheless apply to the instant case by virtue of the circuit court's unnecessary treatment of moot constitutional issues. We agree that plaintiff's successful procurement of a court-ordered lien in lieu of bond and his proper payment for the administrative record on review made it unnecessary for the circuit court to entertain whether the "bond or lien" and "payment for record" provisions of the Act are constitutional. Nevertheless, due to the public nature of those constitutional

issues, the likelihood that the issues will recur, and our desire to render a clear determination on these matters, we choose to invoke the "public interest" exception to the mootness rule as set forth in *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952). Therefore, the Department's motion for remand is denied, and the merits of the Department's appeal will follow.

I

The Department first contends that the circuit court erred in declaring unconstitutional the "bond or lien" provisions of the Act (35 ILCS 120/12 (West 1996)) and the Administrative Review Law (735 ILCS 5/3—111(a)(9) (West 1996)). The relevant provision under the Administrative Review Law states in pertinent part:

"(a) The Circuit Court has power:

\* \* \*

(9) when the particular statute under authority of which the administrative decision was entered requires the plaintiff to file a satisfactory bond and provides for the dismissal of the action for the plaintiff's failure to comply with this requirement unless the court is authorized by the particular statute to enter, and does enter, an order imposing a lien upon the plaintiff's property, to take such proofs and to enter such orders as may be appropriate to carry out the provisions of the particular statute. However, the court shall not approve the bond, nor enter an order for the lien, in any amount which is less than that prescribed by the particular statute under authority of which the administrative decision was entered if the statute provides what the minimum amount of the bond or lien shall be or provides how said minimum amount shall be determined." 735 ILCS 5/3—111(a)(9) (West 1996).

The provision under the Act relating to the above section of the Administrative Review Law states as follows:

"Any person filing an action under the Administrative

Review Law to review a final assessment or revised final assessment issued by the Department under this Act shall *** file a bond with good and sufficient surety or sureties *** or, instead of the bond, obtain an order from the court imposing a lien upon the plaintiff's property as hereinafter provided. If the person filing the complaint fails to comply with this bonding requirement ***, the Department shall file a motion to dismiss and the court shall dismiss the action unless the person filing the action complies with the bonding requirement set out in this provision within 30 days after the filing of the Department's motion to dismiss. *** The amount of such bond shall be fixed and approved by the court, but shall not be less than the amount of the tax and penalty claimed to be due by the Department ***. ***

If the court finds in a particular case that the plaintiff cannot procure and furnish a satisfactory surety or sureties for the kind of bond required herein, the court may relieve the plaintiff of the obligation of filing such bond, if, upon the timely application for a lien in lieu thereof and accompanying proof therein submitted, the court is satisfied that any such lien imposed would operate to secure the assessment in the manner and to the degree as would a bond. Upon a finding that such lien applied for would secure the assessment at issue, the court shall enter an order, in lieu of such bond, subjecting the plaintiff's real and personal property *** to a lien in favor of the Department. Such lien shall be for the amount of the *** final assessment ***. In the exercise of its discretion, the court may impose a lien regardless of the ratio of the taxpayer's assets to the final assessment ***." 35 ILCS 120/12 (West 1996).

In determining whether the statutory provisions challenged by plaintiff withstand scrutiny under the due process and equal protection clauses of the Illinois and United States Constitutions, we observe that the standards for validity under both constitutions are identical. *People v. Reed*, 148 Ill. 2d 1, 11 (1992). In assessing the constitutional validity of statutory provisions, courts must ascertain the level of review applicable to each par-

ticular issue. The level of scrutiny applied in reviewing legislation under equal protection analysis depends on the type of the legislative classification at issue. Those based on race or national origin, or affecting fundamental rights, are afforded a heightened level of review under the "strict scrutiny" test, while economic and social welfare legislation is reviewed under the highly deferential "rational basis" standard. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322-23 (1996). The due process guarantee considers economic legislation under the same "rational basis" standard, which requires that the legislation in question bear a reasonable relationship to a public interest and that the means adopted are reasonable in accomplishing that public objective. *Reed*, 148 Ill. 2d at 11; *Crocker v. Finley*, 99 Ill. 2d 444, 456 (1984).

Plaintiff argues that strict scrutiny should be applied to the analysis at hand, since the "bond or lien" requirement under the Act may preclude individuals of insufficient wealth from obtaining judicial review of tax assessments. We disagree. In our view, to take plaintiff's position would be to conclude that such a classification based solely upon wealth constitutes a suspect classification—a position which this court and the United States Supreme Court have previously declined to adopt. See *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 28, 36 L. Ed. 2d 16, 40, 93 S. Ct. 1278, 1294 (1973); *Illinois Housing Development Authority v. Van Meter*, 82 Ill. 2d 116, 120-21 (1980).

In addition, we reject plaintiff's contention that the alleged infringement caused by the Act implicates a fundamental right to judicial review. Plaintiff was afforded a hearing before an administrative law judge and properly sought administrative review with the circuit court. The right of judicial review conferred upon plaintiff in this case derived not from a constitutional right but, rather, from a statutory right provided for in

the Administrative Review Law (735 ILCS 5/3—111(a)(9) (West 1996)). We find support in article VI, section 9, of the Illinois Constitution, which provides that "Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9; see also *Ortwein v. Schwab*, 410 U.S. 656, 35 L. Ed. 2d 572, 93 S. Ct. 1172 (1973) (recognizing that, beyond a fair hearing, due process does not require a state to provide a system for appeals); *Collins Oil Co. v. Department of Revenue*, 119 Ill. App. 3d 808 (1983); *Glasco Electric Co. v. Department of Revenue*, 87 Ill. App. 3d 1070 (1980), *aff'd*, 86 Ill. 2d 346 (1981).

Consequently, review of the constitutionality of the aforementioned statutory provisions of the Administrative Review Law and the Act will be conducted under the "rational basis" standard. Whether a rational basis exists for a classification is a question of law, which we consider *de novo*. *In re A.A.*, 181 Ill. 2d 32, 38 (1998).

As a rule, under the rational basis test, if any set of facts can reasonably be conceived to justify the legislative provision challenged, it must be upheld. *Jacobson*, 171 Ill. 2d at 324. That is, the statute in question need only be rationally related to a legitimate state goal to be validated. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 37 (1996), citing *People v. Bailey*, 167 Ill. 2d 210, 231 (1995).

In the case *sub judice*, the Department contends that the "bond or lien" provisions of the Administrative Review Law (735 ILCS 5/3—111(a)(9) (West 1996)) and the Act (35 ILCS 120/12 (West 1996)) serve the well-established governmental goal of helping to prevent taxpayers from dissipating their assets following final assessments by the Department and preceding administrative review of those assessments. The Department cites numerous cases in support of its position that the "bond or lien" requirements of the Administrative Review Law

and the Act are constitutional: *Lindsey v. Normet*, 405 U.S. 56, 31 L. Ed. 2d 36, 92 S. Ct. 862 (1972) (acknowledging that states may ensure that appellants post adequate security *prior to* appeal for the purpose of preserving the assets at issue or a damage award previously granted); *Meyer Steel Drum, Inc. v. Department of Revenue*, 152 Ill. App. 3d 84 (1987) (upholding the constitutionality of section 12 of the Act); *Collins Oil Co.*, 119 Ill. App. 3d 808 (same).

Plaintiff counters that the "bond or lien" requirements at issue unreasonably deprive persons of limited wealth from obtaining judicial review and bear no rational relationship to the Department's goal of preventing nondissipation, in light of alternative means available for securing taxpayers' payment of taxes before appeal. We find plaintiff's arguments unpersuasive. We are not convinced that the "bond or lien" requirement under the Act is unreasonable in the context of constitutional analysis, considering that the provision allows a court to grant a lien in an amount far below that of the Department's assessment in a case where the taxpayer's assets are too limited to secure an adequate bond. In addition, the existence of any alternative scheme that could effectuate the government's goal of nondissipation of taxpayers' assets does not render the instant "bond or lien" provisions irrational. At the very least, the requirements at issue offer one of possibly many rational methods for achieving the government's goal of preserving taxpayers' assets. This is all that is required under rational basis review to maintain the validity of the statutes at issue. We, therefore, hold that the circuit court erred in concluding that the "bond or lien" provisions of the Administrative Review Law and the Act are unconstitutional.

We also find error in the circuit court's invocation and interpretation of article I, section 12, of the Illinois

Constitution. That provision reads: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Ill. Const. 1970, art. I, § 12.

Plaintiff argues that, in contravention of article I, section 12, the "bond or lien" provisions in question effectively force taxpayers to purchase justice and curtail the availability of judicial review among persons of insufficient wealth. The Department, however, argues that plaintiff misapplies this section of the Illinois Constitution and that plaintiff's contention is, therefore, unsupported. We agree.

In our view, the "bond or lien" requirements at issue simply place limitations upon the availability of judicial review—review which we have already characterized as nonmandatory and justifiably preconditioned upon the procurement of security under appropriate circumstances. These "bond or lien" requirements do not eliminate any remedies, and we are not persuaded that article I, section 12, of the Illinois Constitution prohibits them. Accordingly, we hold that the circuit court erred in determining that the "bond or lien" provisions of the Administrative Review Law and the Act violate article I, section 12, of the Illinois Constitution. *Cf. Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202 (1985) (holding implying, on other grounds, propriety of section 12 of the Act); *Tick Brothers, Inc. v. Department of Revenue*, 104 Ill. 2d 61 (1984) (same); *Moody's Investors Service, Inc. v. Department of Revenue*, 101 Ill. 2d 291 (1984) (same); *Glasco Electric Co. v. Department of Revenue*, 86 Ill. 2d 346 (1981) (same).

We reach the same conclusion with respect to the circuit court's application of the Taxpayers' Bill of Rights Act (20 ILCS 2520/1 *et seq.* (West 1996)) in invalidating the "bond or lien" requirements. The section of the Act

relied upon by plaintiff is entitled "Legislative Declaration," which states in relevant part: "It is the intent of the General Assembly to place guarantees in Illinois law to ensure that the rights, privacy, and property of Illinois taxpayers are adequately protected during the process of the assessment and collection of taxes." 20 ILCS 2520/2 (West 1996). We find nothing in either the declaratory section or the substantive provisions of the Taxpayers' Bill of Rights Act that conflicts with the "bond or lien" requirements in question. In our view, the declaratory language cited by plaintiff merely expresses the legislature's intent and philosophy behind the Taxpayers' Bill of Rights Act and does not serve as a sound basis for invalidating the statutory provisions at issue in this case. The circuit court, therefore, improperly invoked this act to strike down the pertinent provisions of the Act and the Administrative Review Law.

## II

The Department next contends that the circuit court erred in determining that the "payment for record" provision of the Act violates the state and federal constitutions and the Taxpayers' Bill of Rights Act. That part of the Act states in relevant part:

> "The Department shall certify the record of its proceedings if the taxpayer pays to it the sum of 75¢ per page of testimony taken before the Department and 25¢ per page of all other matters contained in such record, except that these charges may be waived where the Department is satisfied that the aggrieved party is a poor person who cannot afford to pay such charges. If payment for such record is not made by the taxpayer within 30 days after notice from the Department ***, the court *** shall dismiss the complaint ***." 35 ILCS 120/12 (West 1996).

As with the "bond or lien" provisions of the Act, we determine that the proper level of scrutiny in reviewing the constitutionality of the "payment for record" requirement is the rational basis standard.

Upon administrative review, plaintiff argued, and the circuit court agreed, that the $0.75-per-page charge by the Department pursuant to the Act was irrational, in that there existed no plausible reason why this charge for transcribed testimony should be greater than the $0.25 charge for all other matters in an administrative record. The circuit court was unpersuaded by the Department's argument that the greater charge is justified by the additional expense of court reporters, reasoning that a taxpayer would have already paid fees associated with court reporter expenses at earlier proceedings. In this court, the Department asserts that the circuit court overlooked the fact that the General Assembly may have enacted the above provision with the intention of covering increasing costs for court reporter services, including record preparation expenses.

Once again, we find merit in the Department's argument. We believe that the Department's contention can reasonably be conceived to justify the legislative provision challenged by plaintiff. Consequently, the "payment for record" provision of the Act must be upheld. See *Jacobson*, 171 Ill. 2d at 324. For the foregoing reasons, we also hold that this provision is not violative of the Taxpayers' Bill of Rights Act (20 ILCS 2520/1 *et seq.* (West 1996)).

### III

The Department also takes issue with the court's construction and subsequent invalidation of section 130.1915 of the revenue regulations (86 Ill. Adm. Code § 130.1915 (1996)). Additionally, the Department argues that the circuit court erred in relieving plaintiff of his tax liability under the Act. We first address the Department's contentions with respect to section 130.1915 of the revenue regulations.

### A

It is understood that the Act taxes those "engaged in

the business of selling at retail tangible personal property." 35 ILCS 120/12 (West 1996). This tax is imposed, not on sales *per se*, but, rather, upon the occupation of selling goods. *Soho Club, Inc. v. Department of Revenue*, 269 Ill. App. 3d 220 (1995). Importantly, the General Assembly has set forth a presumption that all sales of a retailer are subject to the Act and that the burden of overcoming this presumption lies with the taxpayer. 35 ILCS 120/7 (West 1996). Indeed, the Act goes so far as to presume that "all sales of tangible personal property are subject to tax under this Act until the contrary is established." 35 ILCS 120/7 (West 1996).

Equally significant to the resolution of the issues at bar is section 130.1915 of the revenue regulations, entitled "Auctioneers and Agents," which states in pertinent part:

"(a) When Persons Act As Agent

(1) Every auctioneer or agent, acting for an unknown or undisclosed principal, or entrusted with the possession of any bill of lading, custom house permit or warehouseman's receipt for delivery of any tangible personal property, or entrusted with the possession of any such personal property for the purpose of sale, is deemed to be the owner thereof, and upon the sale of such property to a purchaser for use or consumption, he is required to file a return of the receipts from the sale and to pay to the Department a tax measured by such receipts.

(2) The receipts from any such sale, when made by an auctioneer or agent who is acting for a known or disclosed principal, are taxable to the principal, provided the principal is engaged in the business of selling such tangible personal property at retail.
\*\*\*

(b) When Principal is Disclosed

For the purposes of this Section, a principal is deemed to be disclosed to a purchaser for use or consumption only

when the name and address of such principal is made known to such purchaser at or before the time of the sale and when the name and address of the principal appears upon the books and records of the auctioneer or agent." 86 Ill. Adm. Code § 130.1915 (1996).

The circuit court's application and invalidation of section 130.1915 are key factors in considering whether the court erred in abating plaintiff's taxes, penalties, and interest.

Treating first the circuit court's interpretation of section 130.1915, we note that the court construed the "known principal" provisions of the regulation as exempting an auctioneer from tax liability merely if that agent knows the identities of the principals for whom he sells goods on consignment. The circuit court's interpretation is simply incorrect. Interestingly, the circuit court correctly determined that the "disclosed principal" provisions of section 130.1915 relate to whether *purchasers* of consignment goods have knowledge of auctioneers' principals. The circuit court, however, construed the "known principal" language in that section as relating, not to purchasers' knowledge, but to auctioneers' knowledge of principals.

The circuit court's interpretation of section 130.1915 is erroneous on additional grounds. First, it ignores the explanatory mandate of subsection (b), which clearly relates the terms "disclosed" and "known" to a *purchaser's* knowledge of a principal. Furthermore, the circuit court's construction of section 130.1915 would render all of the disclosure requirements meaningless, since an agent could avoid such requirements simply by virtue of his knowledge of his principals. Moreover, such an interpretation frustrates one of the main purposes behind the regulation—namely to inform purchasers of the true owners of consignment goods sold at auction. As the Department aptly explains, a purchaser's knowledge of the agent's principal allows that purchaser to ascertain whether he is liable for use tax. That is, since a purchas-

er's use tax liability is triggered only on goods bought from retailers, a purchaser's knowledge as to whether the titleholder of consignment goods is a retailer or not is critical. See *Turner v. Wright*, 11 Ill. 2d 161 (1957) (use tax applies to purchasers of tangible personal property regardless of whether purchase is made in Illinois or elsewhere); *Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill. 2d 301 (1966) (purchaser for use incurs primary liability for use tax; vendor's failure to collect tax does not discharge purchaser's liability; and, unless it is shown that purchaser paid use tax to vendor or that latter paid occupation tax to state, revenue department may collect either tax); *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996). Based on the foregoing, we hold that the circuit court misinterpreted section 130.1915.

The circuit court further misapprehended this regulation in deciding to invalidate the provision altogether. Essentially, the court reasoned that, because section 130.1915 effectively taxes fictional ownership status and the failure to disclose and fails to fulfill its true purpose of facilitating the matching of inventory to its source, the regulation is unreasonable and operates outside the scope of its legislative authority. See *Northern Illinois Automobile Wreckers & Rebuilders Ass'n v. Dixon*, 75 Ill. 2d 53 (1979). We disagree in all respects. In light of the Act's presumption of ownership in retailers, section 130.1915 does not tax ownership status or the failure to disclose; rather, it allows auctioneers to avoid tax liability otherwise applicable under the Act. Considering that the regulation serves dual purposes—facilitating audits by requiring documentation of principals and allowing purchasers to ascertain their use tax liability—we conclude that section 130.1915 reasonably implements the Act as intended. Therefore, the circuit court erred in invalidating the regulation. It is for the aforementioned

reasons that we also find no merit in plaintiff's argument on cross-appeal that the entire taxing provision of the Act (35 ILCS 120/2 (West 1996)) should be stricken as unconstitutional for allowing the Department to arbitrarily decide who is taxable under the Act.

B

Nevertheless, with respect to plaintiff's tax liability under the Act, we partially agree with the circuit court's determination as to the effect of the Department's public release dated May 1, 1990, and its "Informational Bulletin FY 91-49" dated April 1, 1991. Our perusal of the May 1, 1990, document reveals that it is rife with advice that could be easily construed as contradictory to the Act and section 130.1915 of the revenue regulations. Particularly problematic are the release's explanations that auctioneers were not required to collect tax under the Act for the sale of property from estates and that auctioneers who only perform estate sales were exempt from tax under the Act. In accordance with section 4(c) of the Taxpayers' Bill of Rights Act (20 ILCS 2520/4(c) (West 1996)), we agree with the circuit court that the Department should have abated its assessment against plaintiff for the period during which the Department's flawed release of May 1, 1990, remained in effect. Section 4(c) of the Act states that the Department has the duty to "abate taxes and penalties assessed based upon erroneous written information or advice given by the Department." 20 ILCS 2520/4(c) (West 1996). As a result, we find no error in the circuit court's abatement of taxes from sales of owned goods and consignment goods for that portion of the audit period preceding the publication of "Informational Bulletin FY 91-49."

We do, however, part company with the circuit court with respect to the effect of this latter publication. The circuit court acknowledged that "Informational Bulletin FY 91-49" offered enough by the way of correction of the

Department's May 1, 1990, release to justify the confirmation of the Department's tax assessment on the sale of *owned* goods for that portion of the audit period following the publication of April 1, 1991. Nevertheless, the circuit court declined to confirm the Department's assessment of taxes on the sale of *consignment* goods during that period. Likewise, the court abated all penalties and interest for the same period.

We find the above abatements for the audit period following the Department's April 1, 1991, publication to be erroneous. Our review of that informational bulletin establishes that the defects in the May 1, 1990, publication were adequately corrected and that the April 1, 1991, bulletin gave plaintiff satisfactory notice of the tax consequences of all of his sales. Consequently, we find no merit to plaintiff's argument on cross-appeal that the April 1, 1991, bulletin failed to correct the May 1, 1990, release and that it, therefore, justified the abatement of the Department's entire tax assessment. Accordingly, we remand to the circuit court and direct it to confirm and recalculate the Department's tax assessment, penalties, and interest based on plaintiff's sales of both owned and consignment merchandise for the audit period immediately following the April 1, 1991, publication of "Informational Bulletin FY 91-49."

IV

The Department further contends that the circuit court erred in ruling that, if any penalty should apply against plaintiff, the proper rate for such penalty would be 15%, based on late payment of tax, rather than 30%, based on the failure to file a return. Under section 5 of the Act, the Department is empowered to "issue the taxpayer a notice of tax liability for the amount of tax claimed by the Department to be due, together with a penalty of 30% thereof" when a taxpayer engaged as a retailer fails to file tax return. 35 ILCS 120/5 (West 1996).

That same section, however, provides in relevant part that, "where the failure to file any tax return required under [the Act] *** is shown to be *** due to *** reasonable cause the penalties imposed *** shall not apply." 35 ILCS 120/5 (West 1996).

The circuit court in this case ruled that, despite the Department's consistent assessment of a 30% "failure to file" penalty against plaintiff, the only applicable penalty, if any, was the 15% "late payment" penalty. The court based its conclusion on the fact that the Department labelled its 30% penalty assessment a "late payment penalty" in its final assessment issued to plaintiff. The record, however, shows that, at all but the issuance stage, the Department calculated and named its 30% penalty a "failure to file" penalty. In addition, we note that plaintiff admitted in testimony that he failed to file any returns during the audit period.

Based on the foregoing, we determine that the circuit court erred in ruling that the Department had somehow relinquished its right to assess the "late payment" penalty. Therefore, in calculating penalties against plaintiff on remand, the circuit court is directed to apply the 30% "late payment" penalty. In light of our previous discussion and directions for remand concerning pre- and post-April 1991 tax liability, we find it unnecessary to resolve the issue of whether the "reasonable cause" exception to penalties applies to plaintiff.

## V

Lastly, the Department claims that the circuit court incorrectly awarded attorney fees to plaintiff. The circuit court based its imposition of attorney fees against the Department upon section 10—55 of the Administrative Procedure Act (5 ILCS 100/10—55 (West 1996) (requiring court to award attorney fees against agency where party has administrative rule invalidated by the court)) and section 7 of the Taxpayers' Bill of Rights Act (20

ILCS 2520/7 (West 1996) (providing for recovery of attorney fees against Department if taxpayer prevails upon administrative review and Department has made an assessment or denial without reasonable cause)). Based on our foregoing conclusions as to the constitutionality, applicability, and reasonableness of the statutes and tax assessments at issue, we hold that the circuit court's imposition of attorney fees against the Department was improper and is, therefore, reversed.

## CONCLUSION

In summary, the circuit court erred by striking as unconstitutional the "bond or lien" and "payment for record" provisions of the Act, as well as the "bond or lien" provision of the Administrative Review Law. In addition, the circuit court improperly construed and invalidated section 130.1915 of the revenue regulations, which allows for the avoidance of tax liability among compliant auctioneers. While we affirm the circuit court's abatement of the Department's tax assessment for the audit period preceding the Department's corrected informational publication, we hold that the court improperly abated and calculated the remaining tax assessment, penalties, and interest. The circuit court also awarded attorney fees to plaintiff in error.

Accordingly, we remand this matter to the circuit court and direct it to make a proper confirmation and recalculation of the Department's tax assessment, penalties, and interest consistent with this opinion.

*Affirmed in part and reversed in part;*
*cause remanded with directions.*

JUSTICE HEIPLE, dissenting:

The majority's conclusion that section 130.1915 is a valid administrative regulation is erroneous. They fail to comprehend the nature of plaintiff's challenge to section 130.1915 let alone provide a coherent justification for the

validity of that section. Section 130.1915 is invalid because it exceeds the scope of the Department of Revenue's authority to enact regulations to implement or enforce the Retailers' Occupation Tax Act (the Act). Section 130.1915 taxes the auctioneer's failure to disclose information to the purchaser or record the principals' names and addresses in his records, not the auctioneer's status as a seller of personal property at retail. Moreover, section 130.1915 is unreasonable because it serves none of the purposes identified by the majority while at the same time producing grossly unfair results for the auctioneer. Therefore, I respectfully dissent.

The General Assembly has "the exclusive power to raise revenue." Ill. Const. 1970, art. IX, § 1. The General Assembly has authorized the Department of Revenue "to make, promulgate and enforce *** reasonable rules and regulations relating to the administration and enforcement" of the Act (35 ILCS 120/12 (West 1996)), but the Department has no authority to enact administrative regulations which alter or extend the Act's substantive provisions. *Canteen Corp. v. Department of Revenue*, 123 Ill. 2d 95, 108 (1988). A tax cannot be imposed by administrative decision. *Brennan Cattle Co. v. Jones*, 41 Ill. 2d 260, 265 (1968). The power to tax is reserved exclusively for the General Assembly. Section 130.1915, therefore, is valid only if it is reasonably related to the Act's underlying purpose, namely to tax "those engaged in the business of selling at retail tangible personal property." 35 ILCS 120/12 (West 1996).

The majority concludes that the provision in section 130.1915 requiring the auctioneer to disclose the name and address of the principal to the purchaser at or before the time of sale is valid because it allows purchasers to ascertain their use tax liability. Purchasers, however, have no interest in ascertaining their use tax liability.

The use tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail from a retailer." 35 ILCS 105/3 (West 1996). The purpose of the use tax is " 'to prevent avoidance of the [retailers' occupation] tax by people making out-of-State purchases, and to protect Illinois merchants against such diversion of business to retailers outside Illinois.' " *Brown's Furniture v. Wagner*, 171 Ill. 2d 410, 418 (1996), quoting *Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill. 2d 301, 303 (1966). "The ultimate incidence of the use tax falls upon the consumer," the *Brown's Furniture* court noted, but "because of the impracticality of collecting the tax from individual purchasers, the burden of its collection is imposed upon the [retailer]." *Brown's Furniture*, 171 Ill. 2d at 418. The retailer's failure to collect the tax when due may not discharge the purchaser's use tax liability (*Klein Town Builders*, 36 Ill. 2d at 303-04), but the fact remains that the responsibility for collecting the tax falls on the retailer, not the purchaser. In other words, the purchaser has absolutely no conceivable interest in ascertaining her use tax liability because the retailer, not the purchaser, collects the use tax.

Whether an auctioneer discloses the name and address of the principal to the purchaser does not change the nature of the auctioneer's occupation; the auctioneer is either engaged in the business of selling at retail or not. Section 130.1915 taxes the auctioneer's failure to disclose, not the privilege to engage in the business of selling at retail. As such, section 130.1915 does not reasonably implement the Act. Instead, section 130.1915 exceeds the scope of the Department's authority because it usurps the General Assembly's exclusive power to tax.

The majority asserts, without any elaboration or analysis, that section 130.1915 reasonably implements the Act because requiring an auctioneer to record the names and addresses of principals "facilitates audits." The

majority's apparent willingness to allow the Department of Revenue to enact any regulation which "facilitates audits" is overreaching. Equally wrong is the majority's assertion that section 130.1915 actually facilitates audits. If an auctioneer is exempt from taxation under the Act, the Department undoubtedly has a legitimate need to determine whether or not the auctioneer's principals are "engaged in the business of selling at retail tangible personal property." If they are, the Department can tax the principals. The requirement in section 130.1915 that auctioneers record the name and addresses of principals, however, provides virtually no assistance to an audit by the Department. Section 130.1915 does not require the auctioneer to match principals to any particular item of inventory. Section 130.1915 merely requires that the name and address of the principal "appear[ ] upon the books and records of the auctioneer" without specifying any particular items owned by the principal.

The recording requirement in section 130.1915, like the disclosure requirement, exceeds the scope of the Department's authority. It taxes the failure to record, not the occupation of selling tangible personal property at retail. Section 130.1915 imposes a tax under the Act even if the auctioneer can identify the principal or principals for whom he sells goods. In this case, for example, plaintiff testified at the administrative hearing his records were destroyed in the Metro East Floods of 1993. Although plaintiff could not produce his records documenting the names and addresses of his principals, he testified he personally knew the identities of all the principals for whom he sold goods. Such an irrebuttable presumption that an auctioneer may be taxed under the Act is grossly unfair, unreasonable and contrary to law.

For these reasons, I would affirm the portion of the circuit court order invalidating section 130.1915 and remand to the circuit court only for a recalculation of the

Department's assessment for taxes on plaintiff's sale of goods that he owned.