THIRD DIVISION
March 31, 2008

No. 1-06-1694

| | | |
|---|---|---|
| ILLINOIS CAMPAIGN FOR POLITICAL | ) | Petition for Review from |
| REFORM an Illinois Not-For-Profit Corporation, | ) | the Illinois State Board of Elections. |
| and KENT REDFIELD, an Illinois Citizen, | ) | |
| | ) | |
| Petitioners-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 05 CD 003 |
| ILLINOIS STATE BOARD OF ELECTIONS, | ) | |
| DANIEL W. WHITE, Executive Director; JESSE | ) | |
| SMART, Chairman; WANDA REDNOUR, Vice | ) | |
| Chairman; PATRICK BRADY, JOHN KEITH, | ) | |
| WILLIAM McGUFFAGE, ALBERT PORTER, | ) | |
| BRYAN SCHNEIDER, ROBERT WALTERS, | ) | |
| Members; and ILLINOIS COALITION FOR | ) | |
| JOBS, GROWTH AND PROSPERITY, an | ) | |
| Illinois Not-For-Profit Corporation, GREGORY | ) | |
| BAISE, Treasurer, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

This is a direct appeal from an order of the Illinois State Board of Elections (Board) dismissing the complaint filed by the Illinois Campaign for Political Reform and Dr. Kent Redfield (petitioners), alleging violations of the campaign disclosure requirements of the Election Code (10 ILCS 5/9-1 *et seq.* (West 2004)), against respondents Illinois Coalition for Jobs, Growth and

Prosperity, and Gregory Baise (collectively, the Coalition). The Board's dismissal order was not based on the merits of the complaint, but on the Board's "deadlock" vote and consequent inability to achieve the statutorily mandated five-member vote to enable the Board to find the matter to have been filed on justifiable grounds and order a public hearing. See 10 ILCS 5/1A-7, 9-21 (West 2004). Petitioners appealed directly to this court pursuant to section 9-22 of the Election Code (10 ILCS 5/9-22 (West 2004)).

On appeal, petitioners contend that the 2003 Amendment to section 9-21 of the Election Code, pursuant to Public Act 93-574 (Pub. Act 93-574, §§, eff. August 21, 2003), unconstitutionally compels the Board to dismiss a complaint when the Board reaches a deadlock vote. Petitioners contend that section 9-21, as amended, is unconstitutional in that the compelled dismissal: (1) undermines the Board's obligation to enforce the disclosure provisions of the Election Code; (2) violates petitioners' due process right to meaningful judicial review; and (3) subjects petitioners to arbitrary government actions. In the alternative, petitioners argue that if section 9-21 is deemed constitutional, this court should review the record and conclude that the vote, by four members of the Board, against finding that the complaint was filed on justifiable grounds was clearly erroneous. For the following reasons, we remand this case to the Board for the entry of findings by the Board.

## I. BACKGROUND

Petitioners filed their original complaint on February 10, 2005, alleging that the Coalition was a political committee and violated several disclosure provisions of the Election Code. On October 5, 2005, petitioners filed an amended complaint alleging that the Coalition was a political

1-06-1694

committee, as defined by sections 9-1.8(a), (c), and (d) of the Election Code (10 ILCS 9-1.8(a), (c), (d) (West 2004)), and that the Coalition violated the disclosure provisions of the Election Code by: (1) failing to file a statement of organization with the Board as required by section 9-3 of the Election Code (10 ILCS 5/9-3 (West 2004)); (2) failing to file contribution and expenditure reports with the Board as required by section 9-10(a), (b), and (c) of the Election Code (10 ILCS 5/9-10 (a), (b), (c) (West 2004)); and (3) by attempting to circumvent the intentions of the Election Code by means of subterfuge in violation of section 100.90(b) of the Illinois Administrative Code (Administrative Code) (26 Ill. Admn. Code 26 §100.90(b), amended at 24 Ill. Reg. 14214 (eff. September 11, 2000)).

On December 29, 2005, the parties stipulated to certain legal issues, including that in order to determine whether the Coalition was obligated to file reports with the Board pursuant to section 9-3 and sections 10(a),(b), and (c) of the Election Code, it must be ascertained if the Coalition was a state political committee pursuant to section 9-1.8(a),(c), or (d) of the Election Code, pursuant to section 100.10(g) of the Administrative Code (26 Ill. Admn. Code §100.10(g), amended at 30 Ill. Reg. 17496 (eff. November 3, 2006).

The parties also stipulated to certain facts, including that the Coalition incorporated as a not-for-profit corporation under Illinois law on January 22, 2004.  The Coalition's articles of incorporation stated that the primary purposes of the Coalition are as follows:

"The purposes for which the corporation is organized and will be operated exclusively for are:

(a)  To secure the future of Illinois by educating, informing

-3-

and activating the public and elected officials to develop, promote
and implement a stable, pro-job, pro-growth, pro-investment climate
in Illinois;

(b) To build, grow and sustain a diverse coalition of
statewide, regional and local groups and individuals to support and
actively participate in educational and informational efforts to promote
job retention and creation in the state of Illinois; and

(c) To propose alternative solutions, build consensus,
communicate with the public and work with all parties to promote job
retention and creation in the state of Illinois."

The parties also stipulated that the Coalition solicited donations on its Web site, which stated that donations "will be used to educate and inform the public on jobs related issues."

The parties stipulated that on March 9, 2004, the Coalition formed the Coalition for Jobs, Growth and Prosperity PAC (Coalition PAC). The Coalition PAC is an Illinois political committee and registered with the Board on March 15, 2004.

The parties also stipulated that in 2004, there were several races for publicly elected office in Illinois, including races for seats in the Illinois House of Representatives and on the Illinois Supreme Court. Primaries for those elections took place on March 16, 2004, and the general election occurred on November 2, 2004. On March 17, 2004, the Coalition issued a press release, where it reported that "The Coalition focused on six Illinois State House races for the March 16, 2004, Primary Election. The group spent approximately $75,000 on direct mail and

phone calls to inform voters of candidates' records on job-related issues. Coalition communications reinforced the positive records of five candidates (underlined), including ***." The parties also stipulated that the sworn affidavit of Gregory W. Baise, treasurer for the Coalition and the Coalition PAC, stated: "In reference to the press release of March 17, 2004, *** the sum of $75,000 that is therein described was expended by the Illinois Coalition for Jobs, Growth and Prosperity PAC, and not by the Illinois Coalition for Jobs, Growth and Prosperity."

The parties also stipulated that the Coalition issued a press release on October 24, 2004, directly before the 2004 general election stating, "Officials from the Illinois Coalition for Jobs, Growth and Prosperity announced their participation in a local state representative race due to candidate Doug Hayse's outstanding approach on job creation for the state." The press release also stated, "The Jobs Coalition cited Hayse's answers in a special economic and job-related candidates' forum that was broadcast over a statewide public service network, the Illinois Channel as their reason for their involvement in the 75th District." The press release also stated, "Starting last spring, the Jobs Coalition worked to inform voters about job-creation issues in a number of races throughout the state. Following are a list of candidates the Coalition has supported through mailings, phone calls or other informative means either for the Primary Election or the General Election ***. In addition, the Jobs Coalition is or has opposed the following candidates ***." The press release further stated, "The Jobs Coalition is planning on sending a mailing into the 75th District and using automated phone calls to inform voters about Hayse's pro-job creation agenda, and has committed approximately $15,000 to [the] task. In all, the Coalition has budgeted $1.2 million statewide for this election cycle."

The parties stipulated that the sworn affidavit of Gregory W. Baise stated, "In reference to the press release of October 24, 2004 *** the press release lists candidates for the Illinois House of Representatives that it has supported through mailings, phone calls and other means, and listing the candidates that it has opposed. The monies expended for mailings, phone calls and other means were expended by the Illinois Coalition for Jobs, Growth and Prosperity PAC, and not by the Illinois Coalition for Jobs, Growth and Prosperity."

The parties also stipulated that on its Web site, the Coalition identified that it "used direct mail and phone banking to inform voters of Rep. Lou Lang's (D-16 Skokie) positive job record. Rep. Lang won the [March] 2004 Illinois Primary." Gregory W. Baise's sworn affidavit stated, "In reference to the matters concerning Citizens for Lou Lang *** no in-kind contributions were made by the Illinois Coalition for Jobs, Growth and Prosperity. Citizens for Lou Lang chose to treat certain sums expended by the Illinois Coalition for Jobs, Growth and Prosperity PAC as in-kind contributions. The Illinois Coalition for Jobs, Growth and Prosperity PAC believes that those sums were not expended as in-kind contributions."

The parties stipulated that between March 16 and November 18, 2004, the Coalition made contributions to the Coalition PAC, totaling $505,000. During this time period, the Coalition was the sole contributor to the Coalition PAC and no individual donations to the Coalition PAC were reported to the Board. The parties stipulated that the Coalition received contributions during the 2004 primary and general election reporting period of at least $505,000. The parties stipulated that petitioners maintained that the contributions received by the Coalition are covered by the disclosure requirements of the Election Code; whereas, the Coalition maintained that such funds

were not contributions as defined by the disclosure requirements of the Election Code. The parties also stipulated that the Coalition made expenditures during the 2004 primary and general election reporting period of at least $345,622.85, which petitioners maintain are covered by the disclosure requirements of the Election Code and the Coalition argues are not expenditures under the Election Code.

The parties further stipulated that the Coalition PAC's semi-annual reports for the time period of March 9, 2004, until June 30, 2004, the PAC reported total contributions of $100,000 received from the Coalition. In the same semiannual report, the PAC reported expenditures totaling $98,814.08 to pay Xpress Professional Services for direct mail pieces, automated telephone calls, and telephone polling.

On May 15, 2006, a closed preliminary hearing was held before a hearing examiner to determine whether the complaint was filed on "justifiable grounds" and had some basis in law and fact. See 26 Ill. Adm. Code §125.252, amended at 14 Ill. Reg. 10832 (eff. June 22, 1990). Following submission of the parties' stipulations, exhibits, and arguments by the parties, the hearing officer prepared a report to the Board expressing the opinion that petitioners "sustained their burden to make allegations with some degree of substance" that acts performed by the Coalition violated the disclosure requirements of the Election Code and recommending that the matter should proceed to public hearing on the following issues: (1) whether the Coalition is a state political committee pursuant to section 9-1.8(a), (c), or (d) of the Election Code; and (2) whether the Coalition is a political committee pursuant to section 100.10(g) of the Administrative Code. The hearing examiner also found that petitioners "have not sustained their burden to make

1-06-1694

allegations with some degree of substance" that the Coalition was required to register with the Board pursuant to section 9-7.5 and that mater should not proceed to public hearing. On June 9, 2006 the Board's general counsel informed the Board of his agreement with the hearing examiner's recommendation.

The Board met on June 12, 2006, to consider the complaint and the examiner's report. Counsel for both parties appeared and presented arguments on the evidence submitted to the examiner. The hearing examiner also appeared before the Board and explained his recommendation. A motion was made to adopt the recommendation of the hearing examiner finding that the complaint was filed on justifiable grounds and to order a public hearing. Four members voted in favor of the motion and four against, so the Board did not achieve the five-vote majority necessary for any action of the Board to become effective (10 ILCS 5/1A-7 (West 2004)). On June 13, 2006, the Board issued an order dismissing petitioners' complaint "[b]ased on the failure of the Board to achieve 5 votes adopting the recommendation of the Hearing Examiner finding the matter to be filed on justifiable grounds and ordering a public hearing." In its order, the Board also adopted the recommendation of the hearing examiner dismissing the allegation that the Coalition was required to file campaign disclosure reports pursuant to section 9-7.5 as not having been filed on justifiable grounds.

Petitioners filed an appeal from the Board's order directly to this court as provided by section 9-22 of the Election Code (10 ILCS 5/9-22 (West 2004)).

II. ANALYSIS

A. Deadlock Dismissal and the Board's Obligations

-8-

On appeal, petitioners first contend that the 2003 amendment to section 9-21 of the Election Code, requiring the Board to dismiss a complaint if it fails to determine that it was filed on justifiable grounds, undermines the Board's obligations under the disclosure requirements of the Election Code. Petitioners argue that under the 2003 amendment, the Board is required to dismiss a complaint where, as in this case, the Board fails to attain a majority vote because the Board is deadlocked along party lines, and that such a requirement undermines the purpose of the Election Code to negate partisanship and promote the goals of candor and openness.

The Board is an administrative agency created by the Illinois Constitution of 1970. The Illinois Constitution specifically contemplated that the Board would operate by consensus across political party lines by requiring that "[n]o political party shall have a majority of members of the Board." Ill. Const. 1970, art. III, §5. The General Assembly, pursuant to the bipartisan mandate of the Illinois Constitution, determined that the Board shall consist of eight members split equally between the political parties. 10 ILCS 5/1A-2 (West 2004). Pursuant to section 1A-2 of the Election Code, four members of the Board must be affiliated with the same political party as the governor and four members must be affiliated with the political party whose nominee for governor received the second highest number of votes. 10 ILCS 5/1A-2 (West 2004). Consequently, the current Board is comprised of members whose political affiliation is allocated equally between the Democratic Party and the Republican Party. In addition, purportedly to promote bipartisan cooperation among the Board members, the General Assembly determined that "5 votes are necessary for *any* action of the Board to become effective." (Emphasis added.) 10 ILCS 5/1A-7 (West 2004).

1-06-1694

Section 9-21 of the Election Code, as amended in 2003 by Public Act 93-574 (Pub. Act 93-574, §5, eff. August 21, 2008), provides that "[u]pon receipt of [a] complaint, the Board shall hold a closed preliminary hearing to determine whether or not the complaint appears to have been filed on justifiable grounds" and "[i]f the Board fails to determine that the complaint has been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9-21 (West 2004).

Prior to the 2003 amendment by Public Act 93-574, section 9-21 of the Election Code provided that "[i]f the Board determines that the complaint has not been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9-21 (West 1996). In Illinois Republican Party v. Illinois State Board of Elections, 188 Ill. 2d 70 (1999), our supreme court interpreted this earlier version of section 9-21 and a majority of the court concluded that the Board was required to conduct a public hearing on a complaint when the Board fails to achieve a vote of five members to dismiss the complaint as not filed on justifiable grounds. The majority held as follows:

"Because five votes are necessary for any action of the Board to become effective [(10 ILCS 5/1A-7 (West 1996))]], the Board may not dismiss a complaint after the closed preliminary hearing unless at least five members vote to do so.

*** [T]he only requirement in the statute is that the Board dismiss the complaint if it determines that the complaint was *not* filed on justifiable grounds. 10 ILCS 5/9-21 (West 1996). The statute thus does not require any majority vote by the Board prior to a public hearing on the complaint." (Emphasis in original.) Illinois Republican

-10-

Party, 188 Ill. 2d at 73-74.

The majority in Illinois Republican Party reasoned that "[b]y requiring that every complaint not dismissed by a majority of the Board proceed to a public hearing, the Code effectively promotes the goals of candor and openness underlying these substantive provisions." Illinois Republican Party, 188 Ill. 2d at 74. Petitioners cite the majority's reasoning in support of their argument that the Board should not be compelled to dismiss a complaint based on the Board's deadlock vote.

However, after our supreme court's decision in Illinois Republican Party, the General Assembly amended section 9-21 to specifically require a majority vote by the Board prior to a public hearing on the complaint by requiring the Board dismiss a complaint "[i]f the Board fails to determine that the complaint has been filed on justifiable grounds." 10 ILCS 5/9-21 (West 2004). We recognize that "' "[w]here statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." ' " Exelon Corp. v. Illinois Department of Revenue, 376 Ill. App. 3d 918, 922 (2007), quoting Burrell v. Southern Truss, 176 Ill. 2d 171, 176 (1997), quoting People v. Hickman, 163 Ill. 2d 250, 262 (1994). Accordingly, we presume that the General Assembly was aware of how the majority interpreted the statute and amended section 9-21 to intend a different construction.

Petitioners contend that amended section 9-21 contravenes the policies of the Election Code. In doing so, petitioners rely heavily upon Justice Rathje's special concurrence in Illinois Republican Party, 188 Ill. 2d at 76 (Rathje, J., specially concurring). Justice Rathje agreed with the majority's interpretation of the previous version of section 9-21 as requiring that, unless five Board members conclude during the closed preliminary hearing that a complaint was not filed on

justifiable grounds, the Board was required to conduct a public hearing on the complaint. Justice Rathje wrote separately to "underscore the disastrous public policy consequences associated with the contrary result." Illinois Republican Party, 188 Ill. 2d at 75 (Rathke, J., specially concurring). Justice Rathje reasoned that in designing the Board membership, the General Assembly " 'sought *to negate partisanship as much as possible* and to guarantee the Board's *political indepen-dence.*' " (Emphasis in original.) Illinois Republican Party, 188 Ill. 2d at 76 (Rathje, J., specially concurring) , quoting Lunding v. Walker, 65 Ill. 2d 516, 527 (1976). Justice Rathje explained that the requirement that every complaint not dismissed by a majority of the Board proceed to a public hearing ensures that the public policies upon which the Board is based are vindicated. By contrast, Justice Rathje explained that if five votes were required to proceed to a public hearing, "a strict party line vote [would] preclud[] any further inquiry into the verified complaint. Thus, as long as partisanship prevails and the two sides never break ranks, no complaint will ever be considered on its merits in a public forum. *** [T]he Board might as well pack up and go home, as no complaint would *ever* receive a public hearing." (Emphasis in original.) Illinois Republican Party, 188 Ill. 2d at 76 (Rathje, J., specially concurring).

Justice Rathje was prescient in warning what would occur. By amending section 9-21 to specifically require a majority vote by the Board prior to a public hearing, the General Assembly adopted a procedure which will often result in a deadlock vote and, as a consequence, those complaints will not be considered on their merits in a public forum. That is exactly what happened in this case. Clearly, the Board acted in a manner consistent with section 9-21, as amended, when the Board dismissed petitioners' complaint based on the Board's failure to achieve

the statutorily mandated five-member vote to proceed to a public hearing. 10 ILCS 5/9-21 (West 2004). The Board may only act in the manner prescribed by the Election Code. See 10 ILCS 5/1A-1 (West 2004) (the Board "shall perform only such duties as *** prescribed by law"). In addition, this court must interpret the Election Code as written and we "may not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." Rosewood Care Center, Inc. v. Caterpillar, Inc., 226 Ill. 2d 559, 567 (2007). Accordingly, we find that the Board complied with the Election Code's directive in this case.

### B. Due Process Claims

Petitioners next contend that the Board's dismissal of their complaint, based on the Board's deadlock vote, violates petitioners' constitutional due process rights to meaningful judicial review and protection against arbitrary government actions.

### 1. Standard of Review

Statutes are presumed constitutional, and courts have a duty to construe enactments by the General Assembly so as to uphold their validity if there is any reasonable way to do so. Wade v. City of North Chicago Police Pension Board, 226 Ill. 2d 485, 510 (2007).

We reject petitioners' argument that the dismissal of their complaint pursuant to section 9-21 of the Election Code implicates a fundamental right and the application of strict scrutiny. Petitioners were afforded a hearing before the Board and properly sought administrative review with this court. The right to judicial review in this case derived not from a constitutional right but, rather, from a statutory right provided for in the Administrative Review Law (735 ILCS 5/3-

1-06-1694

101 et seq. (West 2004)), pursuant to section 9-22 of the Election Code ((10 ILCS 5/9-22 (West 2004)). Consequently, the "rational basis" standard applies to review the constitutionality of section 9-21 of the Election Code. See McLean v. Department of Revenue, 184 Ill. 2d 341, 354-55 (1998) (review of constitutionality of statutory provisions of the Administrative Review Law and Retailers' Occupation Tax Act conducted under the rational basis standard).

Under the rational basis test, if any set of facts can reasonably be conceived to justify the legislative provision challenged, it must be upheld. McLean, 184 Ill. 2d at 355. The statute in question need only be rationally related to a legitimate state goal to be validated. McLean, 184 Ill. 2d at 355.

2. Judicial Review and Alleged Arbitrariness of the Board's Dismissal

Petitioners argue that section 9-21, as amended, unconstitutionally abolished their right to judicial review and permitted the Board to arbitrarily dismiss their complaint based on the Board's deadlock vote. We find that the Board's dismissal is reviewable and reject petitioners' claim that the Board's deadlock dismissal was arbitrary and capricious.

Section 9-22 of the Election Code expressly provides:

"Any party to a Board hearing, any person who files a complaint on which a hearing was denied or not acted upon within the time specified in section 9-21 of this Act, and any party adversely affected by a judgment of the Board may obtain judicial review, which shall be governed by the provisions of the Administrative Review Law." 10 ILCS 5/9-22 (West 2004).

The plain language of section 9-22 provides for judicial review to "any party," or "any person"

-14-

filing a complaint, whether or not the Board has taken any action. Nothing in the Election Code precludes judicial review in the event of a deadlock vote by the Board and dismissal on that basis. In Illinois Republican Party v. State Board of Elections, 294 Ill. App. 3d 915, 920 (1998), *aff'd in part & vacated in part* 188 Ill. 2d 70 (1999), this court held that a deadlock vote by the Board was reviewable and noted "[t]he practical effect of the Board's decision in this instance, dismissal of the complaint for failure to achieve the requisite vote rather than on the merits, is to leave a party 'adversely affected by a judgment of the Board,' a scenario indistinguishable from a dismissal based on a 5 to 3, or an 8 to 0 vote, an outcome fully encompassed by the language of section 9-22 of the Election Code." Here, we also conclude that the Board's deadlock vote, four votes in favor and four votes against a finding of "justifiable grounds" for holding a public hearing, is reviewable by this court.

This finding that the Board's action is reviewable is supported by cases from the federal courts addressing similar issues arising from complaints alleging violations of the Federal Election Campaign Act of 1971, as amended (2 U.S.C. § 431 et seq. (2000)) (FECA). Under FECA, the Federal Election Commission (Commission) is comprised of six members, with no more than three members of the Commission belonging to the same political party. 2 U.S.C. §437c(a)(1) (2000). In Democratic Congressional Campaign Comm'n v. Federal Election Comm'n, 831 F. 2d 1131 (D.C. Cir. 1987), (DCCC) the Commission dismissed a complaint following a deadlock vote on a proposed finding that there existed "reason to believe" the National Republican Campaign Committee had violated certain spending limit provisions of the federal act. The general counsel for the Commission had recommended making such a finding based on the Commission's

precedent. Judicial review provisions of FECA provided that "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party *** or by a failure of the Commission to act on such complaint [during the statutory period]" could file a petition for review in the district court. 2 U.S.C. §437g(a)(8)(A) (1982). The court of appeals affirmed the district court's finding that dismissal of the complaint was reviewable and noted that "[n]othing in the text of [FECA's] judicial review prescription preclud[ed] review of a dismissal due to a deadlock." DCCC, 831 F.2d at 1133.

In Common Cause v. Federal Election Comm'n, 842 F.2d 436 (D.C. Cir. 1988), the Commission dismissed a complaint alleging violations of political campaign disclosure requirements for lack of the requisite four votes in favor of pursuing the investigation. The dismissal was contrary to the general counsel's recommendation. The court of appeals, relying on DCCC, found the case reviewable. Common Cause, 842 F.2d at 449. Similarly, we find that the Board's dismissal in this case based on its deadlock vote is reviewable.

In addition, we reject petitioners' argument that the Board's dismissal based on its deadlock vote is arbitrary and capricious. Pursuant to section 1A-7 of the Election Code (10 ILCS 5/1A-7 (West 2004)), the Board is entitled to deadlock on issues where it cannot obtain the five votes necessary to take any action. Nothing in the Election Code requires the Board's deadlock to be broken in favor of proceeding on the complaint. In fact, in Walker v. State Board of Elections, 65 Ill. 2d 543 (1976), our supreme court found unconstitutional a previous legislative attempt to break a Board deadlock. In Walker, the tie-breaker provisions of the Election Code provided that, in the event of a tie vote on the Board with respect to a proposed

Board action, one Board member's name would be drawn randomly and that Board member would be disqualified from voting on the proposed action. Walker, 65 Ill. 2d at 562-63. Our supreme court held that the tie-breaker provision, which resulted in the removal of a Board member for purposes of any deadlock vote, violated the mandate of article III, section 5, of the Illinois Constitution, which provides that no political party have a majority on the Board. Walker, 65 Ill. 2d at 565. Our supreme court determined that such intervention in a Board deadlock was not intended by the drafters of our state constitution or contemplated in the Election Code. Accordingly, we find petitioners' argument that the Board's dismissal is arbitrary where it is based on the Board's deadlock vote to be without merit.

### 3. The Merits of the Board's Dismissal

While we find that the Board's dismissal is reviewable by this court, we must consider whether the record contains sufficient findings to perform such appellate review in this case.

In DCCC, while the federal court of appeals held the FEC's dismissal of a complaint based on a deadlock vote was reviewable, the court remanded the case to the FEC for a statement of reasons explaining its deadlock dismissal. The court found that important statutory policies were served by requiring an explanation for deadlock dismissals contrary to the recommendation of the general counsel. Such practice facilitates meaningful judicial review of a deadlock decision, contributes to reasoned decision making, ensures reflection and an opportunity for self-correction, and enhances the predictability of decisions for future litigants. See Common Cause, 842 F.2d at 449. See also Illinois Republican Party, 294 Ill. App. 3d at 921, (concluding that better policy dictates that the case be remanded to the Board for a statement of reasons by members rejecting

-17-

the recommendation of the hearing examiner and general counsel), aff'd n part & vacated in part, 188 Ill. 2d 70 (1999).

Also, in Reinhardt v. Board of Education of Alton Community Unit School District No. 11, 61 Ill. 2d 101, 103-04 (1975), our supreme court found that a decision of an administrative agency must contain findings from the evidence so as to make judicial review of that decision possible, and when it does not, it must be remanded to the agency.

Here, the Board entered no findings by its members regarding whether justifiable grounds existed for the filing of the complaint in this case. Because a decision by the Board must contain findings from the evidence to permit judicial review, we find that remand is necessary for a statement of reasons by those Board members rejecting the recommendation of the hearing examiner and the Board's general counsel.

Petitioners assert that, where the Board made no findings of fact or conclusions of law with respect to the complaint, this court should apply *de novo* review to decide whether the complaint was filed on justifiable grounds. Petitioners suggest that this court should review the record, including the complaint, the evidence presented at the closed preliminary hearing, arguments before the Board, and the recommendation of the hearing examiner and the Board's general counsel. While we do not dispute that the record is sufficient to perform such review, we note that to do so would be contrary to principles of administrative review. See Ellison v. Illinois Racing Board, 377 Ill. App. 3d 433, 440 (2007) ("we do not weigh the evidence or substitute our judgment for that of the administrative agency"); Morgan v. Department of Financial and Professional Regulation, 374 Ill. App. 3d 275, 286 (2007) ("we may not substitute our judgment

for that of the administrative agency, but must ascertain whether the findings and decisions of the agency are against the manifest weight of the evidence"); Zejmowicz v. County Board of School Trustees, 133 Ill. App. 2d 735, 738 (1971) ("an administrative body does have broad latitude in formulating its decisions, and a reviewing court would not presume to undertake to make decisions which are entrusted to such a body").

The Attorney General argues that the facts considered by and reasons of the four members of the Board who voted to dismiss petitioners' complaint are ascertainable from the record and, therefore, this court can review the Board's dismissal. The Attorney General contends that because petitioners raised only one issue on appeal, *i.e.,* that the Coalition had accepted contributions in support or opposition to candidates under sections 9-1.8(a) and (c) of the Election Code, and the Coalition made only one response to that allegation, *i.e.,* that the Coalition had not accepted contributions as defined by section 9-1.4 of the Election Code, and petitioners failed to present evidence that the Coalition had done so, this court can discern from the record the only possible reason the four members dismissed petitioners' complaint. Contrary to the Attorney General's argument, petitioners appealed from the dismissal of their complaint, in which petitioners alleged four separate bases for finding that the Coalition acted as a political committee and violated disclosure provisions of the Election Code. In their brief, petitioners specifically argued that "[i]n a complaint that alleges four separate bases by which to find that an organization acted as a political committee, the Board must declare which evidence it accepts and which evidence it rejects when it determines the entire complaint must be dismissed." We therefore reject the Attorney General's argument that we can discern from the record the only possible

1-06-1694

reason the four members of the Board voted to dismiss petitioners' complaint where there were a number of possible grounds for the four members' decision and the four members did not state their findings. See Reinhardt, 61 Ill. 2d at 104-05.

Recently, in Cook County Republican Party v. State Board of Elections, Nos. 1-05-3407, 1-05-3408, 1-05-3409, 1-05-3410, 1-05-3411, 1-05-3412, 1-05-3413, 1-05-3414, 1-05-3415, 1-05-3416 Cons. (December 17, 2007), another division of this court considered whether it could review eight complaints that were dismissed by the Board, pursuant to section 9-21 of the Election Code, for failure to achieve the statutorily mandated five-member vote to enable the Board to find the matter to have been filed on justifiable grounds and order a public hearing. In Cook County Republican Party, the court determined that it was without authority to decide *de novo* whether the complaints were filed on justifiable grounds and noted that it was undisputed that the Board made no factual findings with respect to the complaints. Cook County Republican Party, slip op. at 19. The court concluded that its review was limited to the only Board decision discernible from the record, which was the Board's dismissal of the complaints based on the statutory directive of section 9-21 of the Election Code. The court found that the Board complied with the statute and affirmed the Board's dismissal. Cook County Republican Party, slip op. at 19.

In the present case, as previously discussed, we also find that this court is without authority to decide *de novo* whether petitioners' complaint was filed on justifiable grounds. While it is undisputed that the Board made no factual findings in this case, at oral argument the parties were questioned as to their position regarding whether this court was prohibited from remanding

1-06-1694

this case for the Board to enter such findings.  While all parties responded that they felt there was no need for a remand to the Board, they also all agreed that no legal principle prohibited such a remand.  We therefore decline to address the merits in this case and enter findings on whether petitioners' complaint presented justifiable grounds.  Rather, we find that better policy dictates that we remand to the Board for a statement of findings by the four members rejecting the recommendation of the hearing examiner and their general counsel.

Remanded with directions.

THEIS and CUNNINGHAM, JJ., concur.

1-06-1694

1-06-1694