# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Medina Nursing Center, Inc. v. Health Facilities & Services Review Board*,
2013 IL App (4th) 120554

| | |
|---|---|
| Appellate Court Caption | MEDINA NURSING CENTER, INC.; ALPINE FIRESIDE HEALTH CENTER, LTD.; NEIGHBORS REHABILITATION CENTER, LLC; and FAIRVIEW NURSING PLAZA, INC., Plaintiff-Appellants, v. THE HEALTH FACILITIES AND SERVICES REVIEW BOARD; THE DEPARTMENT OF PUBLIC HEALTH; PECATONICA PAVILION, LLC; REVERE HEALTHCARE, LTD.; DALE GALASSIE, in His Capacity as Chairman of The Health Facilities and Services Review Board; RONALD S. EAKER, in His Capacity as a Member of The Health Facilities and Services Review Board; ALAN GREIMAN, in His Capacity as a Member of The Health Facilities and Services Review Board; JOHN HAYES, in His Capacity as a Member of The Health Facilities and Services Review Board; and DAVID PENN, in His Capacity as a Member of The Health Facilities and Services Review Board, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-0554 |
| Filed | July 12, 2013 |

| | |
|---|---|
| Held<br><br>*(Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.)* | In an action challenging a decision of the Illinois Health Facilities and Services Review Board's approval of an application to construct a long-term nursing care facility in a community in which plaintiffs already provided such services, the trial court's judgment against plaintiffs was vacated and the cause was remanded to the Board with directions to provide a reasoned explanation in writing for its decision, including "findings and conclusions" based on the application and other information that came before the Board, since the Board's letter confirming its approval was insufficient, and the fact that plaintiffs did not request a "written decision" did not excuse the Board from providing one. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-175; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | Nicholas J. Lynn and Mark J. Silberman (argued), both of Duane Morris LLP, of Chicago, for appellants.<br><br>Edward J. Green and Jonathan W. Garlough (argued), both of Foley & Lardner LLP, of Chicago, for appellees Pecatonica Pavilion, LLC, and Revere Healthcare, Ltd.<br><br>Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Laura M. Wunder, Assistant Attorney General, of counsel), for other appellees. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.<br>Justices Pope and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiffs are Medina Nursing Center, Inc.; Alpine Fireside Health Center, Ltd.; Neighbors Rehabilitation Center, LLC; and Fairview Nursing Plaza, Inc.

¶ 2 Defendants are the Illinois Health Facilities and Services Review Board and its members

(the Board); the Illinois Department of Public Health (Department); Pecatonica Pavilion, LLC (Pecatonica); and Revere Healthcare, Ltd. (Revere).

¶ 3 Plaintiffs brought this action for judicial review of the Board's decision to approve project No. 10-031, a proposal to construct a 24-bed long-term-care nursing facility in Pecatonica, Illinois. The circuit court entered judgment against plaintiffs and in defendants' favor. Plaintiffs appeal.

¶ 4 Because judicial review is impossible without a reasoned explanation by the Board, we vacate the circuit court's judgment and remand this case to the Board with directions that the Board provide, in writing, a reasoned explanation for its decision, complete with "findings and conclusions." 735 ILCS 5/3-110 (West 2010).

¶ 5 II. ANALYSIS

¶ 6 A. An Overview of the Parties and the Controversy

¶ 7 Plaintiffs are in the business of providing long-term nursing care, and they object to the advent of a new competitor, Pecatonica. Their stated reason for objecting is that the more empty beds they have, the fewer patients they will have among whom they can spread the cost of their operations, with the consequence that their per-patient prices will have to go up. To prevent the construction of redundant health care facilities, the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/1 to 19.6 (West 2010)) contains licensing procedures. "No person shall construct, modify or establish a health care facility or acquire major medical equipment without first obtaining a permit or exemption from the State Board." 20 ILCS 3960/5 (West 2010).

¶ 8 Pecatonica applied to the Board to construct a nursing care facility, and Revere prepared a study in support of the application. These two appellees, Pecatonica and Revere, have filed a brief, and we will call them "the applicants."

¶ 9 B. The Public Hearing and the State Agency Report

¶ 10 Whenever someone files an application for a permit under the Planning Act, the Department–not the Board, but the Department–holds a public hearing on the application. 77 Ill. Adm. Code 1130.910(a), adopted at 30 Ill. Reg. 14852, 14957 (eff. Sept. 1, 2006). On August 13, 2010, the Department held a public hearing on the Pecatonica application.

¶ 11 Plaintiffs attended the public hearing and presented testimony and written comments in opposition to the project. The gist of their objection was that the project failed to meet the requirements of the Planning Act in that there was no need for a new facility in the planning area, given the excess capacity of existing facilities to provide the same services the project would provide.

¶ 12 Afterward, the Department prepared a "state agency report," in which the Department found that the project met some of the criteria in the Board's regulations but that it failed to meet other criteria. Specifically, the Department found that the project met 12 criteria: the size of the project (77 Ill. Adm. Code 1110.234(a) (2010)), project services utilization (77 Ill. Adm. Code 1110.234(b) (2010)), staffing availability (77 Ill. Adm. Code 1110.1730(g),

amended at 33 Ill. Reg. 3312, 3442 (eff. Feb. 6, 2009)), facility size (77 Ill. Adm. Code 1110.1730(h), amended at 33 Ill. Reg. 3312, 3442 (eff. Feb. 6 2009)), community-related functions (77 Ill. Adm. Code 1110.1730(i), amended at 33 Ill. Reg. 3312, 3442 (eff. Feb. 6, 2009)), zoning (77 Ill. Adm. Code 1110.1730(j), amended at 33 Ill. Reg. 3312, 3442 (eff. Feb. 6, 2009)), assurances of certification (77 Ill. Adm. Code 1110.1730(k)(1), amended at 33 Ill. Reg. 3312, 3443 (eff. Feb. 6, 2009)), availability of funds (77 Ill. Adm. Code 1120.120 (2010)), reasonableness of financing (77 Ill. Adm. Code 1120.130(b) (2010)), debt financing terms (77 Ill. Adm. Code 1120.130(b) (2010)), projected operating costs (77 Ill. Adm. Code 1120.140(d) (2010)), and total effect on capital costs (77 Ill. Adm. Code 1120.140(e) (2010)). The Department found, however, that the project failed to meet four criteria: the general requirements for long-term care (77 Ill. Adm. Code 1110.1730, amended at 33 Ill. Reg. 3312 (eff. Feb. 6, 2009)), avoiding unnecessary duplication of facilities and maldistribution of services (77 Ill. Adm. Code 1110.1730(e), amended at 33 Ill. Reg. 3312, 3340 (eff. Feb. 6, 2009)), financial viability (77 Ill. Adm. Code 1120.130 (2010)), and the reasonableness of the overall project costs (77 Ill. Adm. Code 1120.140(c) (2010)). Because the Department found the project failed to meet those latter four criteria, the Department concluded, in its state agency report, that the project was not in substantial conformance with parts 1110 and 1120 of the Board's regulations (77 Ill. Adm. Code 1110, 1120).

¶ 13                    C. The Board's Meeting of March 21, 2011

¶ 14        On March 21, 2011, the Board held a meeting, in which it considered Pecatonica's application, among other applications.

¶ 15        The Board members heard a short presentation by George Anderson, the chief executive officer of Pecatonica. Then there was some dialogue between Board members and representatives of the project and of the Department. The chairman of the Board, Dale Galassie, asked the Board members if they had any further questions. Hearing no further questions, he said: "I will entertain a motion to approve Project 10-031, Pecatonica Pavilion, to establish a 24-bed long-term care facility at a cost of $16,315,713." John Hayes so moved, and Alan Greiman seconded the motion. Then all the Board members in attendance–Ronald S. Eaker, David Penn, Greiman, Hayes, and Galassie–voted yes, and the motion passed.

¶ 16                          D. The Approval Letter

¶ 17        On March 24, 2011, the Board followed up with a letter to Anderson confirming its approval of the Pecatonica project. The first paragraph of the letter reads as follows:

> "On March 21, 2011, the Illinois Health Facilities and Services Review Board approved the application for permit for the referenced project based upon the project's substantial conformance with the applicable standards and criteria of Part[s] 1110 and 1120. In arriving at a decision, the State Board considered the findings contained in the State Agency Report, the application material, and any testimony made before the State Board."

¶ 19     The approval letter, addressed solely to Anderson, contains no reasoned explanation. Of the standards and criteria in parts 1110 and 1120 (77 Ill. Adm. Code 1110, 1120), the letter does not say which ones are "applicable," let alone which ones the project meets and which ones, if any, the project does not meet. The letter contains no specific findings but only the conclusion that the project substantially conforms to "the applicable standards and criteria" in parts 1110 and 1120.

¶ 20     Plaintiffs are dissatisfied with this boilerplate verbiage; they expect the Board to "provide some reasoning for its decision." They cite, among other authorities, *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101, 103 (1975), in which the Supreme Court of Illinois said:

> "It is clear that a decision by an administrative agency must contain findings to make possible a judicial review of the agency's decision. The Supreme Court in *Securities and Exchange Com. v. Chenery Corp.*, 318 U.S. 80, 94, 87 L. Ed. 626, 63 S. Ct. 454, [462,] described the requirement stating that 'the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.' "

" '[A]dequately sustained' " grounds is another name for a reasoned opinion. An administrative decision should contain basic findings and ultimate conclusions linked together by a coherent rationale. Bernard Schwartz, Administrative Law § 7.29, at 458 (3d ed. 1991).

¶ 21     The Board argues, however, that "if plaintiffs were unsatisfied with the level of detail in the Board's approval letter, they could have requested a 'written decision' from the Board as set forth in section 12(11) of the Planning Act (20 ILCS 3960/12(11) (West 2010))." That section gave the Board the power and the duty to do the following:

> "(11) Issue written decisions upon request of the applicant or an adversely affected party to the Board within 30 days of the meeting in which a final decision has been made. A 'final decision' for purposes of this Act is the decision to approve or deny an application, or take other actions permitted under this Act, at the time and date of the meeting that such action is scheduled by the Board. The staff of the State Board shall prepare a written copy of the final decision and the State Board shall approve a final copy for inclusion in the formal record." *Id.*

The Board contends that "[b]ecause Plaintiffs did not utilize this administrative avenue available to them," *i.e.*, requesting from the Board a "written decision," "they should not now be heard to criticize the Board for not providing what they chose not to seek."

¶ 22     If the Board interprets section 12(11) as depriving a party of the right to a written decision if the party does not request one from the Board, section 12(11) conflicts with section 11 of the Planning Act (20 ILCS 3960/11 (West 2010)), which provides: "Any person who is adversely affected by a final decision of the State Board may have such decision judicially reviewed. The provisions of the Administrative Review Law [(735 ILCS 5/3-101 to 3-113 (West 2010))] *** shall apply to and govern all proceedings for the judicial review of final administrative decisions of the State Board." Section 3-108(b) of the Administrative

Review Law (735 ILCS 5/3-108(b) (West 2010)) in turn provides that, upon the filing of a complaint for administrative review, "the administrative agency shall file an answer which *shall* consist of the original or a certified copy of the entire record of the proceedings under review, *including* such evidence as may have been heard by it and the *findings* and decision made by it." (Emphases added.)

¶ 23     Without such written findings by the agency, we cannot comply with section 3-110 of the Administrative Review Law (735 ILCS 5/3-110 (West 2010)). That section says, under the heading "Scope of Review," that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." *Id.* Obviously, to hold the Board's findings of fact to be *prima facie* true and correct, we must be informed by the Board what, precisely, those findings of fact are. We do not know which standards and criteria in parts 1110 and 1120 the Board found the project to meet and which ones the Board found the project not to meet. The Board did not adopt the state agency report. Obviously, the Board disagreed with the Department's conclusion that the project did *not* substantially conform to parts 1110 and 1120. We have the Department's findings and conclusions, but we do not have the Board's findings and conclusions.

¶ 24     "[I]f the requirement of findings means anything, it must compel administrative agencies adequately to articulate the bases of their action, showing a rational connection between the facts found and the choice made." Schwartz, *supra*, at 460. The grounds of the administrative decision must be " 'adequately sustained,' " that is, by a reasoned explanation. *Reinhardt*, 61 Ill. 2d at 103 (quoting *Chenery Corp.*, 318 U.S. at 94). "The necessity for administrative agencies to provide a statement of reasons *** is a fundamental principle of administrative law." *Brooks v. Atomic Energy Comm'n*, 476 F.2d 924, 926-27 (D.C. Cir. 1973). Due process requires the administrative decisonmaker to "state the reasons for his determination." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). See Schwartz, *supra*, at 463 ("Our system may thus be moving toward a more general requirement for reasoned administrative decisions.").

¶ 25     The Board cites some cases holding the boilerplate "substantial compliance" language to be sufficient for purposes of judicial review of the Board's decisions. See *Access Center for Health, Ltd. v. Health Facilities Planning Board*, 283 Ill. App. 3d 227, 237 (1996); *Charter Medical of Cook County, Inc. v. HCA Health Services of Midwest, Inc.*, 185 Ill. App. 3d 983, 991 (1989). We disagree with those decisions because, under binding supreme court precedent, the grounds of the administrative decision must be adequately sustained (*Reinhardt*, 61 Ill. 2d at 103) and the robotic declaration of "substantial conformance with the applicable standards and criteria of Part 1110 and 1120" is worthless for purposes of judicial review. The Board might as well just say, "Application approved." "Conclusory findings in language borrowed from the statute are not enlightening to a reviewing court; hence, a recitation of findings of fact in uninformative statutory language will not suffice." Schwartz, *supra*, at 459.

¶ 26     We decline to supply a theoretical justification of the Board's decision, even at the invitation of the Board's attorneys. See *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962). In supplying such a justification, we effectively would be making factual findings and judgment calls that the Board alone should make, attributing them to the Board in a speculative way (*e.g.*, "the Board could have found," "the Board might have

reasonably decided"). See *Illinois Campaign for Political Reform v. Illinois State Board of Elections*, 382 Ill. App. 3d 51, 64 (2008); *Ocean Hideaway Condominium Ass'n v. Boardwalk Plaza Venture*, 515 A.2d 485, 490 (Md. Ct. Spec. App. 1986).

¶ 27 The better course is to have the Board issue a reasoned opinion so as to make possible a meaningful judicial review. We provide reasons for *our* decisions, a salutary practice that not only helps the public to have confidence in what we do but also guards against arbitrariness. "Requiring articulation of the reasoning process evokes care on the part of the decider." Schwartz, *supra*, at 456. Likewise, the Board should provide reasons for its decisions. Therefore, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we vacate the circuit court's judgment and remand this case to the Board with directions that the Board provide, in writing, a reasoned explanation for its decision in this case, complete with "findings and conclusions." 735 ILCS 5/3-110 (West 2010). When writing its decision, the Board "shall consider the application material, requested or supplemental information, public comment and public hearing testimony, IDPH [(Illinois Department of Public Health)] findings, and other information [that came] before it." 77 Ill. Adm. Code 1130.655, adopted at 30 Ill. Reg. 14852, 14935 (eff. Sept. 1, 2006).

¶ 28         III. CONCLUSION

¶ 29 For the foregoing reasons, we vacate the circuit court's judgment and remand this case with directions.

¶ 30 Vacated and remanded with directions.